# HOLTZMAN *v.* DOUGLAS.

PRACTICE; LEADING QUESTIONS; REVERSIBLE ERROR; EJECTMENT; ADVERSE POSSESSION; LANDLORD AND TENANT; ATTORNMENT; CLAIM OF TITLE.

1. Whether or not a witness shall be allowed to answer a leading question is discretionary with the trial court, and the allowance of such a question is not reversible error.
2. Where the defense to an action of ejectment is adverse possession, the defendant may show the notoriety of his possession by testimony to the effect that in the neighborhood he was reputed to be the owner of the land in dispute.
3. If after a trespasser has occupied land for some years he attorns and pays rent to the holder of a tax deed thereof, but does not change the character of his occupancy, the entry of the latter as against the true owner will date from such attornment, and it is immaterial what the intent of the trespasser was when he first took possession.
4. For the purposes of a title by adverse possession, actual enclosure is not necessary, and any occupation, visible and notorious, of which the property is susceptible, and which excludes the true owner from it, is sufficient.
5. Payment of taxes upon a lot for a long period of years is strong evidence of a claim of title to the lot.

No. 385. Submitted January 14, 1895. Decided March 4, 1895.

HEARING on an appeal by the plaintiff from a judgment on verdict in an action of ejectment. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a suit in ejectment instituted in the Supreme Court of the District of Columbia on May 31, 1889, by the appellant, William F. Holtzman, as plaintiff, to recover from the appellees the possession of a lot of ground in the city of Washington, designated as lot 8, in square No. 941. The defense was adverse possession; and the jury returned a verdict for the defendants. From the judgment entered thereon the plaintiff has appealed.

At the trial, the plaintiff proved the record title to have been in one David A. Hall, who died on December 24, 1870, and the transmission of that title to himself by divers conveyances, which vested it in him in fee simple. He also proved that the defendants, claiming as the heirs at law of one William Douglas, who died in September, 1865, were in possession by a tenant who held of them and paid them rent.

The testimony on behalf of the defendants showed what is known as a tax deed from the then existing corporation of the city of Washington to William Douglas, dated July 6, 1865, and recorded among the Land Records of the District on July 12, 1865, wherein it was recited that the property had been sold for unpaid taxes assessed on the land in the name of David A. Hall, its owner at the time. This deed was offered to show color of title in the defendants, and entry under such color of title. But in the brief time that elapsed between the execution of this deed and the death of William Douglas, it does not appear that the latter took any steps whatever to secure possession of the property.

It was testified on behalf of the defendants, that, some time in the latter part of the same year, 1865, one Richard Rothwell, a stone cutter and builder, who owned and occupied an adjoining lot, deposited upon the rear of the lot in controversy some pontoons, which he had purchased from the United States, and which he stored there until he could make some disposition of them; and that he afterwards used a part of this lot for the deposit of stone and marble, which he used in his business. He testified that he had deposited three or four wagon loads of marble there as early as the year 1867; and that some of the pontoons remained on the lot for four or five years. He also testified that, in the year 1870, he commenced to deposit stone there in large quantities; and that in 1872 he erected a small shed on the lot in which to carry on his work, and which he replaced with a larger structure in or about the year 1882.

Some time in the year 1867, Mrs. Douglas, the widow of

William Douglas, apparently acting on behalf of his estate or of the estate of their children, had an interview with Rothwell and came to an understanding with him with reference to his continued occupancy of the lot, in pursuance of which understanding he agreed to pay as rent to her annually therefor a sum of money equal to the amount of taxes that should annually be assessed upon it; and he did so pay rent to her until her death in the year 1887; and after her death he paid the rent to her daughter, a Mrs. Wirt, down to about the time of the institution of this suit.    During all this time, that is from 1867 to 1889, Rothwell continued to occupy the property, and paid rent therefor to the Douglases; and the latter paid the taxes annually for all the years from 1868 to 1893, both inclusive, except for the year 1870, during which there was an interregnum in consequence of the establishment about that time of a territorial form of government in the District of Columbia, the assessment of the property having been in the name of William Douglas since the year 1868, inclusive.

By a stipulation filed in the cause since the argument, in order to supplement some omission in the printed record, it appears that, at the death of William Douglas, in 1865, four of his children were adults and two minors; and that Mrs. Douglas, the widow, was appointed guardian to the two latter, and filed in her guardianship accounts for several years the annual receipts for taxes on this lot paid by her, and was allowed credit for them by the court.    It, therefore, appears that, with reference to this lot, she acted not for herself or on her own individual account, but on behalf of the estate that was then in her children.

There was a proposition on the part of Mrs. Douglas, apparently about the time of Rothwell's attornment to her, to inclose the lot with a fence.    But to this Rothwell objected, on the ground that it would interfere with his use of it and with free access to it of his horses and wagons; and the project was abandoned, so that the lot was never actually

inclosed, and the only evidences of occupation consisted in such use of the property as has been indicated. The streets had not been actually laid out in that neighborhood otherwise than by their delineation on the map of the city; and the whole region was an open field with no definite landmarks to indicate to the casual observer the actual location of this lot.

There was testimony on the part of the plaintiff in rebuttal, tending to show that Rothwell's actual occupation did not begin until about the year 1871, and even not until the year 1874.

Five instructions to the jury were requested on behalf of the plaintiff, two of which were given and three refused. On behalf of the defendants, one instruction was asked, which was given. Exceptions were duly reserved by the plaintiff. Exception was also taken by the plaintiff to the allowance of a question propounded to their own witness, Rothwell, by the counsel for the defendants, whether the lot in controversy had ever been known in the neighborhood by any other name than the Douglas lot. And upon these several exceptions three assignments of error are based, as follows: 1. That it was error to overrule the plaintiff's objection to the question asked of the witness Rothwell as to how the lot had been known in the neighborhood. 2. That the testimony was insufficient to establish title in the defendants by adverse possession, and that therefore it was error to refuse the first and second prayers requested by the plaintiff in that regard. 3. That it was error to grant the prayer requested by the defendants, inasmuch as it assumed, as it is argued, that there was testimony to support it, whereas the plaintiff claims that there was no such testimony.

*Messrs. A. A. & T. W. Birney* for the appellant:

1. The question asked of the witness Rothwell was inadmissible, not only because it was leading, but also because it called for hearsay evidence, and did not come within any

of the recognized exceptions to the rule excluding hearsay testimony. The question is fully covered by the decision of the Supreme Court in *Ellicott* v. *Pearl*, 10 Pet. 412.

2. *The acts of alleged adverse possession.*—The suit was brought in 1889, and the vital question was, were the defendants in possession prior to 1869 ? There was no evidence to sustain the claim of adverse occupancy prior to 1870, and the jury should have been so instructed. The facts attempted to be proved were, that in 1865 Rothwell, claiming no right whatever in the lot, deposited upon it stone and pontoons. But since he claimed no title, the act was not only not in hostility to the true owner, but must be held to have been a holding under that owner. *Harvey* v. *Tyler*, 2 Wall. 328 ; Tyler on Ejectment, 860. For a definition of adverse possession, see Buswell, Lim. & Ad. Pos. 319 *et seq.*

The only other act prior to 1870 upon which to base the claim of title by adverse possession is the attornment to Mrs. Douglas in October, 1867. This was a secret agreement, not of a character to become known to the true owners, or to other persons, and for this reason insufficient. *Ward* v. *Cochran*, 150 U. S. 597 ; *Brooks* v. *Bruyn*, 18 Ill. 539 ; *Stamper* v. *Griffin*, 20 Ga. 312 ; *Gay* v. *Mitchell*, 35 Ga. 139 ; Buswell on Lim. & Adv. Pos. 348.

The acts of Rothwell in 1865, in putting stone and material on the land, having been done as tenant at will of plaintiff's grantors, and in subservience to their title, surely a secret agreement of attornment, not brought to their notice, cannot be held to have terminated that tenancy, and to constitute that "adverse and hostile, visible and notorious" entry or conduct upon which defendants must rely to defeat the plaintiff's right of entry.

On another ground the first prayer for the plaintiff should have been granted, and the prayer granted to the defendant should have been rejected. There was no evidence of acts of ownership by the defendants or their witness Rothwell sufficient to support the claim of adverse

5 Ct. App.—26

possession. The lot was not fenced; it was part of a large common and its bounds were not defined; it was not cultivated; there was no building upon it, and the only sign of occupancy or possession was a pile of pontoons covering a space "about as large as a quarter of the court room," and some marble occupying "a space about twenty feet square just adjoining" Rothwell's lot. This was not "exclusive" occupancy, for all the rest of the lot was open and free to all users. Such occupancy in no case could affect more than the small spaces covered by the materials. *Ward* v. *Cochran*, 150 U. S. 597.

The placing of the pontoons and marble on the ground as an "overflow" from a large pile upon Rothwell's ground was not an indication of claim of ownership or dominion. It was an indecisive act entirely consistent with submission to the true owner's title, and not the foundation of adverse possession. Having a wood pile on land is not sufficient. *Miller* v. *Downing*, 54 N. Y. 631. Erection of cow pen, ranging cattle, and occasionally felling trees, not sufficient. *Royal* v. *The Lessee of Lisle*, 15 Ga. 545. To dig sand on and from the land from time to time and sell the same are but mere trespasses. *Parker* v. *Wallis*, 60 Md. 15. Occupying a sugar place from year to year for the purpose of making sugar not sufficient. *Wilson* v. *Blake*, 53 Vt. 305. Going upon wild land, digging and hunting for a corner and boundary lines, driving cattle on the land and employing a man to break it in the following spring, are not such going into possession as will set the Statute of Limitations in operation. *Brown* v. *Rose*, 55 Iowa, 734. Turning cattle on uninclosed land to pasture not sufficient. *Doe* v. *Mulford*, 1 Hayes, 311. Making an entry upon lands, cutting wood and spliting rails not sufficient. *Carroll* v. *Gillion*, 33 Ga. 539.

There was nothing to indicate the bounds of possession. It is true that a fence is not necessary in all cases to constitute adverse possession, but the jury in such case must be satisfied "that the property was not susceptible of any more

strict and definite possession than has been taken." Adverse possession must be marked by definite boundaries to make it available. *Zeilin* v. *Rogers*, 21 Fed. Rep. 107; *Carter* v. *Ruddy*, 56 Fed. Rep. 542; 10 Johns. 477; Buswell on Lim. & Adv. Pos. 345.

3. The prayer granted defendant assumed that there was evidence of facts as to which there was no evidence. It told the jury that they were at liberty to find that Rothwell took possession for the purposes of a stone yard, and deposited thereon stone used by him in his business continuously, openly, adversely and uninterruptedly, for a period of twenty years before suit. There was no testimony at all tending to prove these facts.

*Mr. Henry E. Davis* and *Messrs. Edwards & Barnard* for the appellees:

The reason of the rule requiring actual occupation of ground to create a possessory title is, that notice may be thus given to the owner of an adverse claim of title. In this case notice is given by the land records and tax books of the city, as well as by the visible occupation and notorious use of the lot. A constructive possession of a part of a tract of ground may be adverse, when the party has color of title, and is in actual possession of the residue thereof. Tyler on Eject. & Ad. Pos. 895; *Ellicott* v. *Pearl*, 10 Pet. 412. Where one enters into possession under claim of title by a recorded deed, his entry and possession are referred to such title, and he is deemed to have seizin of the land coextensive with the boundaries stated in his deed, if there is no one else in open adverse possession of any other portion of it. Buswell on Lim. & Adv. Pos., Secs. 254, 255; *Prescott* v. *Nevers*, 4 Mason (C. C.), 326. The presumption is that a party in possession under a recorded deed is claiming adversely, and according to his title. *Forest* v. *Jackson*, 56 N. H. 357; *Wickes* v. *Lake*, 25 Wis. 71. An owner of ground cannot be excused for ignorance of the particular claim of

right under which the premises were held by those in possession.    He is not in the position of a casual observer, but must diligently look to his own interests, know the boundaries of his land, and ascertain the extent, meaning and locality of any settlement made within his lines without his authority.    *Brownson* v. *Scanlan*, 59 Texas, 226; *Bracken* v. *Jones*, 63 Texas, 184, 187.    The recorded deed, and the open and notorious possession and use of the lot, were sufficient to give notice to the world of a claim of right to the lot in question; but the continued payment of the taxes was "powerful evidence" also of such claim.    *Ellicott* v. *Pearl*, 10 Pet. 412; *Fletcher* v. *Fuller*, 120 U. S. 534, 553.    The use of a vacant lot, openly, continuously, and exclusively, is equivalent to an enclosure of the same, or the erection of buildings thereon.    It is but another method of notifying the world that the party is claiming the right of ownership —that his "flag" is planted there, and kept flying over that ground.    *Ewing* v. *Burnet*, 11 Pet. 49–51.

Although Rothwell entered upon this lot at first without right, yet the apparent legal title was then in Douglas, under the recorded tax deed, and his possession would be presumed to be under the Douglas title.    Especially would this be true when, two years afterwards, a contract for such use and occupation was agreed upon between Douglas and Rothwell, thereby ratifying or licensing the former unlawful possession.

The five elements necessary to constitute title by possession are clearly stated, and the proper qualification given to the word "actual" as distinguished from "constructive" when applied to the possession, in the recent case of *Bradshaw* v. *Stott*, 4 App. D. C. 527.

Tested by the rule there laid down, the instruction granted by the court below on behalf of defendants is correct.

Mr. Justice Morris delivered the opinion of the Court:

1. The first error assigned by the appellant is based upon a question propounded on the part of the appellees to their

tenant, Richard Rothwell, who was called as a witness on their behalf. The question propounded was this : " Was this lot ever known in the neighborhood by any other name than the Douglas lot?" And the answer of the witness to it was, " No." Objection was interposed to the question, on the ground that it was both irrelevant and leading—irrelevant, because it was not competent to show that the lot was known by any particular name.

Plainly, the question was leading, and for that reason properly subject to objection. It not only suggested the desired answer, but almost of necessity precluded any other answer; and it is an elementary rule of practice that a party should not be permitted to put leading questions to his own witness at the trial. But this is a rule that is subject to great modification; and it is always a matter more or less under the control and discretion of the trial court. That there are many circumstances under which a trial court will properly permit leading questions to be put by a party to his own witness, must, of course, be conceded; for the exceptions to the rule are as elementary as the rule itself. And we are not advised that a judgment has ever been reversed in any case on the sole ground that a question propounded by a party to his own witness, otherwise pertinent and proper, was of the nature of a leading question. The authorities seem to hold generally that the whole subject is within the discretion of the trial court, and that the mere allowance of a leading question should not be held in an appellate tribunal as reversible error. *York* v. *Pease,* 2 Gray, 282; *Commonwealth* v. *Thrasher,* 11 Gray, 57; *Green* v. *Gould,* 3 Allen, 465; *Shufflin* v. *People,* 4 Hun, 16; *Regina* v. *Murphy,* 8 Carrington & Paine, 297. And this seems to be consonant with reason and sound principle; inasmuch as otherwise appeals might be greatly multiplied for mere matters of form, to the detriment of the due administration of justice.

But it is argued that this question, to the allowance of which exception has been taken, was not only leading, but

also incompetent and irrelevant, and the case of *Ellicott* v. *Pearl*, 10 Pet. 412, is cited in support of the position.

We cannot regard that case as applicable here. The question to which objection was made in that case and which was excluded and held to have been properly excluded, was as to what some surveyor, or person engaged with a surveyor, had on some occasion stated as to the place of the location of certain boundary lines. It was held that the boundary lines of a patent could not properly be established by hearsay testimony of that kind. But the issue in the case before us is very different. It involved the notoriety of the possession by the appellees of the lot in dispute; and certainly it was competent to prove that notoriety by testimony, as to the persons whom all the people in the neighborhood understood to be in the possession of the property. For the question is not as to whether the lot bore a specific name, but as to who were supposed to be the owners of it. That is the plain import of the question; and while it seems that the form of the question is a proper subject of criticism, it does not appear to us to be otherwise improper or irrelevant.

2. As already stated, the plaintiff submitted five prayers for instructions to the jury, two of which were granted and three refused. Those which were refused were as follows:

"1. The jury are instructed, that on the issues of adverse possession for the period of twenty years before suit brought the verdict must be for the plaintiff.

" 2. If the jury find from the evidence that the witness Rothwell first became tenant to the defendants in 1867, by oral agreement to pay to them as annual rent the amount of taxes to be assessed thereon; and further find that after making such agreement he did not fence or otherwise enclose said premises or place material thereon prior to the year 1870, otherwise than by retaining upon it pontoons and stones placed there before he had any relations with the defendants, and when he claimed no right or title in

said premises, then they are instructed that Rothwell's holding before such year 1870 is not to be regarded as an actual and visible possession adverse to the plaintiff, and cannot defeat this action.

"3. The jury are instructed that, in the absence of an adversary possession, the possession is presumed in law to be in the person holding the title to the land, and one who enters upon and occupies the land of another claiming no right or title thereto may be considered the tenant at will of the true owner, and he will remain such tenant and his holding will not be adverse until something happens which notifies the true owner that he ceases to hold as his tenant and holds adversely. Applying this rule to the case on trial, if the jury shall find from the evidence that more than twenty years before suit brought the witness Rothwell, claiming no title or right in the lot of land in question, entered thereon and deposited on the rear part thereof certain building materials, such entry must be taken to have been in subordination to the title of the true owner, and Rothwell must be considered to have been the tenant at will of such owner; and to change such tenancy into an adverse holding it was not enough that Rothwell attorned to Mrs. Douglas, and after such attornment suffered his materials aforesaid only to remain upon said lot as they were before such attornment, but he must have done some act on the land calculated to notify the true owner that he had ceased to hold as tenant to him and claimed in some other right."

The two instructions that were given at the request of the plaintiff were these:

"4. To defeat the claim of the plaintiff in this action upon the defense of adverse possession the jury must find from the evidence that the defendants, in person or by their tenants, have for more than twenty years prior to the 31st of May, 1889, held actual, exclusive, continuous, open, notorious, and adverse possession of the said premises, and

they cannot extend their possession by tacking it to the prior possession of any person who, during such prior possession, did not claim any title or right to the premises.

" 5. The jury are instructed that the defense of adverse possession is an affirmative defense, and that it is incumbent upon the defendants to establish such adverse possession by a clear preponderance of proof, and therefore, if the proof is equally balanced, they must find for the plaintiff."

That the rule of law as to adverse possession was correctly laid down in these two instructions that were granted, and stated as favorably to the plaintiff as he could desire, cannot be doubted. They are in precise accord with the latest utterance of the Supreme Court of the United States on the subject in the case of *Ward* v. *Cochran*, 150 U. S. 597, and with all the best authorities. But the substance of the appellant's argument is, that there was no sufficient evidence to be submitted to the jury ; and that therefore the other instructions which were requested, the practical effect of which would have been to take the case from the jury, should have been granted. It is urged that there is no evidence of any acts of adverse possession by the defendants prior to the year 1870; and it must be conceded that, if this were the case, the plaintiff would have been entitled to the peremptory instruction which he sought.

The vice of the second and third instructions requested by the plaintiff lies in the fact that they seek to bind the defendants by the acts and claims of Rothwell, and not by their own acts and claims. If Rothwell had been the defendant in the suit and the claimant of the land for himself, the circumstances under which he first entered and his disclaimer of any claim of right or title in himself might be important as between him and the plaintiff. But his motives and purposes, and his actions in the premises, cannot reasonably be held to bind the defendants, except in so far as those actions are his actions as their tenant. If he had been put in possession for the first time by Mrs. Douglas,

when she appears first to have entered upon the premises in 1867, it could not with any show of reason be claimed that his occupation from that time should not be regarded as adverse to the title of the plaintiff. Now, what difference could it make either to the rights of the appellant or to those of the appellee, that, at some time or for some previous period of time, this same Rothwell or anyone else had also been an occupant of the land, and a trespasser upon it, so far as the title of the appellant was concerned? Certainly, because there has been one trespasser upon land, who perhaps did not intend to gain title to it by adverse possession, it does not follow that a subsequent occupant may not gain such title. It will scarcely be contended that, if the defendants had themselves entered in person in 1867, purchased the business and the material of Rothwell upon the premises, and continued that business precisely in the manner in which he continued to conduct it, they might not properly make that entry the basis of a claim of title by adverse possession. And if they could do so by entry in person, why might they not do it by the entry of a tenant for them? And if they could do it by a tenant, of what consequence would it be whether the tenant had ever had any connection with the land before. The possession thereafter, in contemplation of law, is not the possession of the tenant, but that of the person or persons under whom the tenant holds.

The theory that Rothwell, having occupied the land before 1867, without any claim of title must be regarded as having held in subserviency to the title of the plaintiff as the true owner; and that thereafter no adverse title could accrue without notice of some kind to the true owner, is untenable, or at all events not applicable to the present case. Undoubtedly, one who has entered upon land as a tenant, or by the permission or grace of the owner of the land, cannot be allowed to disclaim the character of that entry and to hold adversely, until he does something whereby to notify

the true owner of his changed relation to him. But an entry adverse in itself, and without the knowledge or consent, either express or implied, of the true owner, and continued occupation under such adverse entry, do not require the additional element of express intention on the part of the person who enters to form the basis of title by adverse possession. But whatever might have been the case with regard to the tenant Rothwell, we fail to see how the secret thoughts and purposes that may have actuated him in his original entry could be regarded as affecting the rights of the defendants in this case. His disclaimer of right might be held as a disclaimer with reference to the claim of title of the defendants with as much plausibility as it could be held to operate in favor of the title now held by the plaintiff.

There was, however, it is argued, no actual inclosure of the land by the defendants or their tenant such as to put the appellant upon notice of the adverse occupation; and numerous cases are cited by the appellant to show what acts of use or occupation of property would be insufficient as a basis for a claim of title by adverse possession. But we fail to see how these cases are applicable. It is well settled law that, for the purposes of a title by adverse possession, actual inclosure is not necessary, and that any occupation of the property, visible and notorious, of which the property is susceptible, and which excludes the true owner from it, is sufficient. *Ellicott* v. *Pearl*, 10 Pet. 412; *Ewing* v. *Burnet*, 11 Pet. 41. And, short of an actual inclosure, it is not easy to conceive of a use and occupation more sharply distinctive and adverse than the conversion of the property into a stone yard, with the stone practically scattered all over it, according to the testimony of one or more of the witnesses.

Nor should the fact be ignored in this connection, that for upwards of twenty years the record owners of this property wholly neglected their duties to the public in regard to it, never sought to pay the taxes, and permitted the defendants to discharge the burden which it was incum-

bent upon themselves to bear, and it might well be supposed that they had abandoned the property and acquiesced in the title which the defendants had acquired. In the case of *Ewing* v. *Burnet*, 11 Pet. 41, 54, the Supreme Court of the United States said that "the uninterrupted payment of taxes on the lot for twenty-four successive years (by the party in possession) was *powerful* evidence of a claim of right to the whole lot." And we are disposed to hold, in accordance with that view, that there was ample evidence in this case to go to the jury to show the claim of the defendants, and the nature and extent of it from the year 1867.

3. An assignment of error is also based upon an instruction given by the court to the jury on behalf of the appellees, which was as follows:

"If the jury find from the evidence that William Douglas, the ancestor of the defendants, bought at a tax sale held by the late corporation of Washington, so called, the property in controversy in this case and paid the price bid for it by him at such sale and received from said corporation of Washington a deed to said property, which was by him duly filed for record and recorded in the land records of the District of Columbia more than twenty years prior to the commencement of this suit; that thereupon the said property was assessed to the said William Douglas on the tax books of the City of Washington, and the taxes thereon from that time until the beginning of this suit paid by the said William Douglas or his successors in title, the defendants in this case; that at a period of time more than twenty years before the commencement of this suit the said property was rented on behalf of the defendants to a person who took the same and held possession thereof as tenant of the defendants for the purposes of a stone yard, paying rent therefor from the date of making such arrangement with the defendants; and that, although the said property was not enclosed by a fence, yet the person so renting the same, either upon the whole or a part thereof, during his occupancy, deposited

stone used by him in his business, and that such use and possession of said property was continued by the occupant thereof actually, exclusively, continuously, openly, notoriously, adversely, and uninterruptedly for a period of twenty years next before the commencement of this suit, then the jury is instructed that the defendants are entitled to recover."

It is argued on behalf of the appellant that there was no evidence of the facts assumed in this instruction ; that there was no evidence to show that Rothwell had taken possession of the property for the purposes of a stone yard, or that, after his attornment to Mrs. Douglas, he had placed any stone upon the lot prior to 1870. But this contention resolves itself into a dispute about words. Both in law and in fact it must be held that the continuance of possession under a new arrangement is the equivalent of taking possession under such arrangement; and the keeping upon the premises of stone previously deposited there must be regarded as the equivalent of depositing stone upon the land. We cannot think that the jury were misled by the expressions used in the instruction ; and the instruction otherwise is not regarded as liable to objection or criticism. Certainly it has not omitted any of the elements that are required to cooperate to constitute title by adverse possession.

While as to the early years of the occupation in this case, the evidence of acts of use and possession is somewhat meager, and those acts themselves might be regarded as rather indefinite, we cannot say, as matter of law, that there was nothing to go to the jury with reference to occupation prior to 1870. We think there was sufficient evidence as to such occupation to be submitted to the jury; and it seems to us that the case was fairly and properly submitted to them upon the law. We are unwilling to disturb their verdict.

It is our opinion, therefore, that the judgment of the court below should *be affirmed, with costs; and it is so ordered.*