# JOHNSON *v.* THOMAS.

CLOUD ON TITLE; ADVERSE POSSESSION, EVIDENCE OF; PARTIES.

1. A certificate of title made by a title company purporting to show that a good fee-simple title was in a given person at a specified time cannot, if objected to, be accepted as the equivalent of proof of such title in a suit to establish title by adverse possession.

2. The proceeding authorized by § 111, D. C. Code, to establish title by adverse possession is not merely a proceeding against a particular claimant of the property involved, but is practically an equitable action of ejectment to establish the right and title of the complainant as against all of the world; and it is necessary that all of the holders of the record title should be made parties to the suit. A mere claim of title by someone is not sufficient to sustain such a bill, which should show affirmatively that all persons claiming or entitled to claim title are parties; and such a bill should allege that the defendants are owners of the record title and that fact not be left to inference.

3. Where one entitled under a will to 8 acres of land, by mistake takes possession of 11 acres and occupies the entire tract adversely for the statutory period, such mistake cannot be held to operate against his acquisition by such adverse possession of title to the 3 acres so wrongfully occupied.

4. While enclosure of land is the most tangible evidence of adverse possession, cultivation is equivalent for that purpose; and where it appears that the occupant has for more than the statutory period continuously, from year to year, cultivated the land in controversy, part in one year and part in another, and not the whole in any one year, but sufficiently to give notice to any claimants that he was in actual possession, a sufficient title by adverse possession is shown.

5. Where part of a tract of land near a city and claimed to have been in adverse possession for the statutory period has, during such occupancy, been woodland, and it appears that the claimant, while cultivating the other part of the tract, merely drove his cows occasionally into the woodland and occasionally carried off a fallen tree to burn as firewood, such casual acts are not evidence of adverse possession of the woodland sufficient to put the true owner upon notice that such woodland was being claimed or used adversely to him.

6. Where, in a suit in equity, to establish title by adverse possession to a tract of land, the evidence showed that title had been so acquired by the complainant to part of the tract only, but was insufficient to

enable the court to ascertain the limits of such part, the cause was remanded for reference to the auditor or proceedings before commissioners to set off the land to ascertain such limits.

No. 1349.   Submitted December 4, 1903.   Decided January 19, 1904.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia in a statutory proceeding in equity to establish title by adverse possession to a certain tract of land.                                   *Reversed.*

The COURT in the opinion stated the case as follows:

This is a suit instituted on the equity side of the supreme court of the District of Columbia by the appellee, Elizabeth Thomas, as complainant, under § 111 of the Code and the general jurisdiction of a court of equity, to establish her title by adverse possession to a tract of land in the county of Washington, in the District of Columbia, outside of the ancient municipal limits of the city of Washington.

It appears from the record that, previously to February 8, 1862, one Elizabeth Butler, an old colored woman, died in this District seised and possessed of a considerable tract of land in the county of Washington, which included the tract in controversy in this suit, and leaving a will, which was filed in the office of the register of wills for the District, and duly admitted to probate on February 8, 1862, which was duly executed for the conveyance of real estate, and whereby she devised her property to her children and grandchildren in certain portions: First, to her son George Butler she gave 6 acres of land in two adjoining tracts, each containing about 3 acres, upon one of which it seems, he had a house and resided at the time. Next, to the two children of a daughter Ellen, named Sarah and Elizabeth, she gave a tract of 8 acres with a house upon it, in which Sarah resided at the time. In the third place, to the three children of a daughter Eliza, named George, Sarah Catherine, and Elizabeth, and of whom the last named is the appellee in this suit— the said Eliza herself, whose name by marriage was Proctor, pre-

sumably being dead at the time—she gave a tract of 8 acres, whereon was the dwelling house in which the testatrix resided, and in which Elizabeth Thomas or Elizabeth Proctor resided with her grandmother. Of these three children of Eliza Proctor, one, George Proctor, died about the year 1882, unmarried and without children or issue; and one, the daughter Sarah Catherine, who became Sarah Diggs, died about the year 1887, leaving no children or issue surviving her. She had a husband; but whether he survived her or not does not appear, and it is immaterial, since it appears that he also died long before the institution of this suit. By these deaths of George Proctor and Sarah Diggs their interests under the will of their grandmother are presumed to have become vested in their surviving sister, Elizabeth Proctor, who became Elizabeth Thomas, the appellee in this case.

In the fourth place, to the two children of a daughter Jane she gave all the rest and residue of the land owned by her in the county, after the reservation of a small lot for a family burial place; and, after some other devises and bequests not necessary to be here specified, she gave to her daughter Ellen and her son James Butler all her real estate in the city of Washington, where she seems also to have had some holdings.

She then named Alfred Ray, Esquire, of this city, as the executor of her will, "to carry into effect the several devises and bequests" therein mentioned, according to the language of the will itself.

As already stated, this will was admitted to probate on February 8, 1862. It contained no specific description by metes and bounds of any of the allotments, and no designation by which their limits could be accurately determined. But on December 20, 1877, the executor, Alfred Ray, assuming and purporting to act under the power supposed to be vested in him by the will, executed and delivered to the parties in interest deeds of conveyance by metes and bounds of their several portions of the estate. One of these deeds was to the heirs of George Butler, who had died about March, 1867. This deed was to Mary C. Shamwell, Harriet Jackson, Caroline Jones, and George Butler, Jr., as such heirs, conveyed 6 acres to them in accordance with the will, and

described it substantially the same as the property here in controversy.

A second deed, also purporting to convey 8 acres in accordance with the will, was executed by Ray to Elizabeth Thomas (the appellee here), George Proctor, and Sarah Catherine Diggs. This property adjoined that mentioned in the previous deed, to the east. And a third deed, conveying 8 acres to the west of the property in dispute, was executed by the executor to Sarah Matthews and Elizabeth Savoy, the children of Ellen, daughter of the testatrix, Elizabeth Butler.

For the purpose of the execution of these deeds, Ray had caused a survey to be made. The purpose of the survey and the deeds evidently was to identify with certainty and by metes and bounds the several tracts which in the will had been granted loosely and without accurate identification. We may presume that these deeds were accepted by all the parties in interest. They seem to have made the record title complete in the several grantees.

Elizabeth Thomas, the appellee here, and one of the three children of Eliza Proctor, who received what may be designated as the eastern tract, with the dwelling thereon, in which she had resided with her grandmother, continued to occupy this tract of 8 acres, and has occupied it down to the present time, although it is understood to be without fencing or inclosure of any kind. Also under the mistaken impression that about 3 acres, constituting the eastern part of the middle tract, which had been allotted by the will and the executor's deed to the heirs of George Butler, was part of her tract of 8 acres, she occupied this part also, has cultivated it, or part of it, from year to year in a fashion, and has continued to hold it in that way from the year 1862 to the present time. This is the part of the property to which she now in these proceedings seeks to establish a title in herself by adverse possession. In one of the plats filed in the cause it is designated as lots 3 and 4, each containing about 1 acre and a half, lot 4 being the eastern half, and lot 3 the western part, of the disputed territory. The lots are partly cleared land and partly woodland. At the edge of the woodland and separating it from

the cleared portion are remnants of rifle pits used during the Civil War.

In her bill of complaint the appellee alleges that she is and has been in actual occupation and possession of these two lots 3 and 4 for thirty-eight years and upwards, describing them by metes and bounds, and she claims to have acquired a good title to them by adverse possession to the exclusion of all other persons, but that there are certain defects and irregularities constituting a cloud thereon and against which she claims to have her title established. These alleged defects and irregularities consist of a certain deed from Clarence F. Norment to the defendant, Edward D. Johnson, purporting to convey the land in dispute in fee simple, and a deed of trust thereon from Johnson to the defendants Swormstedt and Bradley, as trustees, to secure the payment of $2,500 to the defendant Russell. Johnson, Swormstedt, and Bradley, and Russell are made defendants to the bill, the prayer of which is that they be all enjoined from setting up title, and that the title of the complainant be decreed to be complete and perfect.

The defendants answered denying the occupation and adverse possession of the complainant, and, while not distinctly claiming the title to be in themselves, admitted the conveyance from Norment and the subsequent deed of trust, and averred that the title in Norment had previously been pronounced to be good.

Much testimony was taken. In the course of it the facts that have been stated were developed. It was also developed that the title of Norment was based upon three or four tax deeds, which, so far as this record shows, would appear to have been utterly worthless for the conveyance of title, and upon a quitclaim deed procured by Norment in the year 1897 from two of several heirs of George Butler, whereby they relinquished to him all their right and title in lots 3 and 4.

It appears that at the time of the execution of this quitclaim deed to Clarence F. Norment, the legal title of record, so far as we can gather from the testimony in this case, was outstanding in Samuel Norment, who was the father of Clarence F. Norment, and in the heirs of George Butler; and the record does not dis-

close how the title of Samuel Norment became vested in Clarence F. Norment, if it did become vested in him. Samuel Norment seems to have become interested in the property in consequence of a judgment which he had obtained against the younger George Butler, a levy and sale thereunder by the United States marshal for this District, and a conveyance to him by the marshal. The interest of the younger George Butler thus vested in Samuel Norment, if the proceedings were valid, was an undivided one-fourth interest in the middle tract, wherein, on the land records, he was a tenant in common with his three sisters, Mary C. Shamwell, Harriet Jackson, and Caroline Jones.

In pursuance of a remarkably irregular and defective equity proceeding, designated as No. 6818 on the equity docket of the supreme court of the District, which was initiated and consummated on the same day, June 7, 1879, deeds in the nature of deeds of partition and quitclaim were executed between Samuel Norment, claiming to hold the title of the younger George Butler, Mary C. Shamwell, Caroline Jones, and the heirs of Harriet Jackson, who, it seems, was herself dead at the time. These heirs were four in number, George W. Jackson, Clara P. Jackson, Margaret G. Ewell, and Alphonsus L. Jackson, children of Harriet Jackson, of whom the two last named appear to have been minors, and are stated to have been such in the equity suit No. 6818. In that suit one James H. Shamwell was appointed trustee to convey for them. Three deeds were then executed, all dated on June 12, 1879. One purported to convey lot No. 4 to Samuel Norment; another, to convey lot No. 1 to Mary C. Shamwell; and a third, to convey lot No. 2 to Caroline Jones. There had been some anticipation of the equity suit in regard to lot No. 3; for by a deed dated May 29, 1879, that lot had been conveyed by some of the other parties to George W. Jackson and others.

Thus, as far as we were advised by the proceedings in the case as shown in the record before the court at the time of the argument, the title would seem to have stood on the land records of the District at the time of the commencement of this suit. But evidently the proceedings are incomplete in this regard. It is clear that they are so in one particular at least. Samuel Nor

ment appears to have died in the year 1891; and it does not appear what became of his title. It seems probable that it became vested in Clarence F. Norment; but there is no sufficient proof of this in the record.

Upon the pleadings and the testimony in the case a decree was rendered in accordance with the prayer of the bill of complaint. It was decreed that the complainant was vested with a fee-simple title to the premises in controversy by adverse possession, and the defendants were enjoined from setting up any claim of title against her.

*Mr. S. Herbert Giesy* for the appellants.

*Mr. Wm. R. Andrews* and *Mr. D. W. Baker* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

1. Upon the record of this case that was before us at the time of the argument, it did not appear that the defendants, here the appellants, were vested with the record title to the land in controversy. On the contrary, it did appear affirmatively from the record, as it then stood, that the defendants did not then have the full and complete legal title in them, if indeed they had any title at all. Apart from the apparent chasm between Samuel Norment and Clarence F. Norment, it is plain that there was outstanding, so far as the record in the case showed, a legal title in one George W. Jackson to an undivided interest in the property in dispute. Nor can a certificate of title, offered on behalf of the defendants and objected to on behalf of the complainant, which purported to have been made by a title company in this city, and to allege that there was a good fee-simple title in Clarence F. Norment, be accepted as the equivalent of proof of such title.

Now, however, after notification by the court to the counsel on both sides calling their attention to this defect in the proceedings, there has been filed a copy of a deed from George W. Jackson to Clarence F. Norment executed in 1897; and there has been filed

also a stipulation or agreement between the parties by their respective counsel to the effect that the defendants in the cause were in fact vested with the full and complete legal title to the land in controversy.   The objection, therefore, to the sufficiency of the proceedings for the apparent absence of proper parties, may now be assumed to have disappeared; and it would, perhaps, have been unnecessary to mention it here, were it not for the fact that counsel on both sides seem to have proceeded upon the erroneous assumption that a mere claim of title by some one is sufficient to sustain a bill under § 111 of the Code.

The proceeding authorized by this section of the Code is not merely a proceeding to quiet title as against a particular claimant; but it is practically an equitable action of ejectment to establish the right and title of the complainant as against all the world.   The purpose of it is to procure and place among the land records of the District of Columbia a decree declaring a perfect title to have become vested in the complainant by adverse possession, as though the complainant had been the first grantee from the State.   Ordinarily those who are interested adversely to the complainant in such a proceeding are the holders or owners of what is called the record title; and it is absolutely necessary that those holders or owners should in some way be made parties to the suit.   Otherwise, the suit would be of no avail as against them.   It will not suffice to select some special claimant, who may or may not claim the whole title, and proceed exclusively against him.   The proceedings should show affirmatively that all persons claiming or entitled to claim the record title are made parties.   The Code says that "in such action it shall not be necessary to make any person a party defendant, except such persons as may appear to have a claim or title adverse to that of the plaintiff."   But this is as much as to say that all persons who appear to have a claim or title adverse to that of the complainant must be made parties defendant; and such would be the general requirement of equity and justice in any event.

The bill of complaint here alleged that the complainant's title by adverse possession did not appear of record; and that, according to the record, that is, the land records of the District of

Columbia, certain irregularities and defects, consisting of a deed in fee from Clarence F. Norment to the defendant Johnson and a subsequent deed from Johnson to the other defendants, did appear of record and constituted a cloud upon the complainant's title, which should be removed. This is all the allegation of ownership of the record title which appears in the bill of complaint; and yet the principal prayer of the bill is that the complainant's title should be "declared to be complete and perfect," and only secondarily that the defendants should be enjoined from setting up title. It might be greatly questioned whether the allegation was sufficient to sustain the prayer of the bill.

Nor does the answer of the defendants, which is erroneously assumed to admit that the whole record title is in the defendants, greatly aid the complainant in this regard. The admission of the answer is "that the property was conveyed as alleged to the defendant Edward D. Johnson by Clarence F. Norment and wife and by the said Johnson encumbered as alleged; but more than a year before said conveyance the Washington Title Insurance Company guaranteed the title of said land to be good in said Clarence F. Norment." But, although an inference to that effect might be drawn from that statement, the statement is not the equivalent of an admission that the whole record title was in Clarence F. Norment, and through him in the defendants.

In the course of the proceedings, the defendants to some extent supplied the defects in the complainant's case, against the objection, however, of the complainant, by proof that the greater part of the record title was vested in them. But the proof was not complete. An undivided interest appeared to be outstanding in one George W. Jackson, himself a witness in the case for the defendants, which did not appear, as the record before us stood at the time of the argument, to have been acquired by Norment, or to have become vested in the defendants.

For these defects in the proceedings and evident want of proper parties, as the record then stood, we would have been compelled to reverse, or at least greatly to modify, the decree appealed from. But, as already stated, assuming that the defects might possibly be remedied and the cause thereupon decided

upon its merits, the court notified counsel of the defects as they appeared to it, and counsel have supplied the omissions. And now there has been filed a copy of a deed from George W. Jackson to Clarence F. Norment executed in 1897; and also a stipulation by the parties through their counsel to the effect that the whole record title had in fact become vested in the defendants. This stipulation may be assumed to have removed the difficulty as to defect of parties and defect of allegation in the bill of complaint. It is unnecessary, therefore, to notice the supplemental brief of the complainant with reference to the question of proper parties, further than to say that the authorities cited in it are not applicable to a case like the present.

2. The important question in this case is substantially a question merely of fact, whether the complainant has established by sufficient proof that she has been in adverse possession of the property in controversy for a period of twenty years or upwards before the institution of this suit. And we think that the proof is sufficient to establish her title.

The complainant is an ignorant colored woman, so ignorant, indeed, that she does not seem to appreciate even now that she has taken possession of any more property than she was entitled to do under the will of Elizabeth Butler. Under that will she was entitled to 8 acres; she is in possession or claims to be in possession of 11 acres; and yet she protests that she does not want more than she was entitled to have under the will, but she claims that she was entitled under the will to all the property which she claims now, notwithstanding repeated surveys to the contrary. But, as she specifically claims the property in controversy as her own, and as she has exercised unequivocal acts of ownership over it adverse to all the world for twenty years and upwards, her mistake cannot be held to operate against her acquisition of title by adverse possession. It may be that a title by adverse possession is founded as frequently upon honest mistake as upon deliberate tort. Certainly it is well-established law that, if a man goes upon the land of another, whether he does so by honest mistake upon the supposition that it is his own, or with the deliberate purpose of appropriating to himself that which is

the property of another, and occupies it exclusively and adversely to all the world for a period of twenty years or upwards, he may by such adverse occupation acquire a complete title in himself. This is elementary doctrine in the law of adverse possession; and most assuredly greater consideration is due to a title by adverse possession based upon an honest mistake than to one based upon deliberate and wilful wrong.

No inclosure is shown in this case of the tract in question, or of any part of it, by the complainant. The acts of ownership claimed to have been exercised are those of periodical cultivation from year to year. But it is well-settled law that, while inclosure is the most tangible evidence of adverse occupation, yet cultivation is the equivalent of inclosure for this purpose. *Maxwell Land Grant Co.* v. *Dawson,* 151 U. S. 603, 38 L. ed. 284, 14 Sup. Ct. Rep. 458; 3 Washb. Real Prop. p. 137. In our opinion the testimony contained in the record is sufficient to show that, from the time at which she obtained her deed from Ray in 1877 —and it is unnecessary to go back of that date—the complainant continuously cultivated from year to year the tract in controversy, mainly each year in part, and not the whole in any one year, but sufficiently to give notice to any and all claimants that she was in the actual occupation of the premises. It would serve no good purpose for this case or for any other to examine the testimony in detail to show the foundation of our opinion. As we have said, the question is one of fact, and not a question of law; and we think that the fact of adverse occupation by the complainant has been sufficiently shown.

Part of the tract in controversy, however, is composed of woodland, which was never sought to be either cultivated or inclosed by the complainant; and to this part of the tract the complainant seeks to enforce her title by adverse possession on the ground that she occasionally drove her cows into it, and that she occasionally carried off a fallen tree to burn as firewood. But we cannot regard such casual acts as these as evidence of adverse occupation sufficient to put the record owner of the title or the world in general upon notice that their land was being claimed or used adversely to them. That there are cases in which it has been held

that the pasturing of cattle or the cutting of wood for fuel constitutes such an act of ownership as to uphold a title by adverse possession, if continued for a sufficiently long time, may well be admitted. But such cases would have little or no application to tracts of pine wood in the neighborhood of the city of Washington. The owner or owners of such tracts cannot reasonably be said to be put upon notice of an adverse occupation of the land by the fact that the cows of neighboring residents are permitted to range through them, or have even been deliberately driven into them, and that occasionally a fallen tree has been taken away by neighbors for fuel. To make the vesting or devesting of titles to land depend upon such casual acts of occupation or trespass as these would tend to destroy the security of all titles to land. The acts proved are at best only casual or desultory acts, and they are wanting in the characteristic of continuity requisite to create a title by adverse possession.

Our conclusion is that, while the testimony on behalf of the complainant, which has not been overcome by that on behalf of the defendants, is sufficient to show the acquisition of a title by her by adverse possession to so much of the land as she cultivated, it is not sufficient to show the acquisition of any such title by her to the part of the land which consisted of woodland, and which seems to have been separated from the cultivated or cultivable part by the remnant of some rifle pits used as such during the Civil War. Her occupation, being wholly without color of title of any kind, cannot be construed to extend beyond the limits within which she has exercised visible acts of ownership and possession. So far as the decree of the court below has sought to vest her with title to the woodland as well as to the cultivated field, we must regard it as erroneous. Before any decree can properly be entered, the extent of her cultivation and occupation of the land should be definitely and accurately ascertained, either by a reference to the auditor of the court, or by the appointment of commissioners to set off the land, or in some other way. When this has been ascertained, the land so determined, and no more, should be confirmed to her.

For the reasons assigned, the decree appealed from must be

D. C.]                              Syllabus.

reversed, each party to pay one-half of the costs of this appeal; that is, the complainant is to pay one half and the defendants one half.

The cause will be remanded to the Supreme Court of the District of Columbia, with directions to vacate its decree, and for further proceedings therein in accordance with this opinion, and not inconsistent with law; and it is so ordered.        *Reversed.*

An appeal to the Supreme Court of the United States was prayed and allowed February 4, 1904.