ROBINSON v. NORDMAN.

Opinion delivered June 10, 1905.

1. ADVERSE POSSESSION—INTERRUPTION.—One who has been in the open and adverse possession of a tract of land for six years under color of title will not be presumed to have abandoned it in the seventh year, where he was obliged to discontinue cultivation of it temporarily on account of an overflow which rendered it impossible to secure a tenant.   (Page 595.)

2. SAME—TITLE BY LIMITATION.—One who together with his privies in title, has held open and adverse possession of land for seven years under color of title acquires title by adverse possession.  (Page 595.)

Appeal from Woodruff Chancery Court.

EDWARD D. ROBERTSON, Judge.

Reversed.

*Blackwood & Williams,* for appellant.

Possession under a donation deed for a period of two years is a good title. Kirby's Dig. § 5061; 32 Ark. 131; 57 Ark. 523; 58 Ark. 151; 53 Ark. 418; 71 Ark. 117; 59 Ark. 460; 60 Ark. 499, 163. Possession is presumed to continue. 34 Ark. 598; 38 Ark. 181; 21 Ark. 17; 38 Ark. 194; 35 Miss. 490; 28 Vt. 394. Any conveyance is sufficient to mark the boundaries of a possession. 30 Ark. 640; 34 Ark. 534; 48 Ark. 312. Possession was sufficiently established. 57 Ark. 110; 153 Ill. 330; 15

Ill. 273; 18 Ill. 542; 89 Ill. 189; 14 Pa. St. 297; 47 Tex. 529; 20 Mich. 384; 35 Miss. 490. · Temporary absence will not break the possession. 44 Fed. 34; 63 Mo. 233; 94 N. C. 37; 5 Mo. 536; 22 Ark. 79; 49 Ark. 266; 27 Ark. 92; 40 Ark. 237. Robinson acquired title by adverse possession under deed from South. 38 Ark. 181; 34 Ark. 534; 23 Ark. 336; 48 Ark. 312.

*Thomas C. Trimble, Joe T. Robinson, Thomas C. Trimble, Jr.,* for appellee.

Interrupted and discontinued periods of possession cannot be so tacked as to ripen into title by prescription. 48 S. E. 429; 99 N. W. 653; 64 N. J. Eq. 147; 42 Ark. 118. The evidence fails to show title by adverse possession under the seven years statute. 45 Ark. 81; 30 Ark. 640; 42 Tenn. 28; 27 Ark. 77; 48 Ark. 277; 65 Ark. 422; 52 Ind. 8; 49 Ark. 274; 43 Ark. 287; 78 N. C. 354; 68 Pac. 189; 19 Ga. 27; 32 Ga. 239, 572; 37 Tex. 437; 36 Miss. 404; Sedg. Trial of Tit. 744. Appellant failed to establish his adverse possession. 61 Ark. 464; 85 Hun, 564; 87 Tex. 264; 2 McCord, 260. The question of adverse possession was one of fact, and the chancellor's finding is supported by the evidenec. 33 Wash. 588; 119 Wis. 580; 32 Ind. App. 158; 44 Ark. 216; 42 Ark. 246; 49 Ark. 465; 50 Ark. 185.

BATTLE, J. Frederick Nordman and Joseph M. Schmunch brought a suit in equity against S. C. Robinson and others, asking that their title to the north half of northwest quarter, and northwest quarter of the northeast quarter, and the southwest quarter of the northwest quarter, of section 34 in township 4 north, and in range 3 west, be quieted. Robinson answered, and asked for the same relief. An action by Robinson and others brought against Nordman to recover damages for cutting timber on these lands was consolidated with the suit instituted by Nordman and Schmunch. The chancery court rendered a decree quieting the title of Nordman and Schmunch to the land as against the defendants to their suit; and the defendants appealed.

Robinson's title to the lands in controversy depends solely upon the statute of limitations. The State of Arkansas exe-

cuted to Rachel Mayberry a donation deed for the northwest quarter of said section 34. She held adverse possession under this deed for many years, and conveyed to one McBride, and he held under his deed for several years, and conveyed to another, and each grantee conveyed to another until it was conveyed to Robinson. Each held adverse possession until he conveyed, and the aggregate possession of all exceeded seven years. So Robinson acquired title by adverse possession to this part of the land in controversy.

On the 22d day of December, 1892, J. T. South, by deed pretended to convey to Robinson the north half of section 34. Robinson took possession of the land, under this deed, on the 28th of December, 1892, and held adversely until sometime in 1898 or 1899, when an overflow came and flooded the land. One witness testified that it drove every one out of the vicinity of the land except himself. During the six years prior to the flood Robinson rented the land, from year to year, to tenants, and they raised and gathered crops thereon; and Robinson cleared a part of the land and made other improvements on it. Such were his acts of exclusive ownership that the land became generally known as the "Robinson land." He endeavored to rent it to a tenant for the year 1899, but, on account of the overflow, was unable to do so. For that year it remained idle. The visible and well known effects of an extensive, notorious and disastrous flood doubtless clearly indicated that he had not abandoned it, but that he had been forced to discontinue cultivation of it temporarily. There still remained on it a farm of 60 acres, susceptible of cultivation; and it was unreasonable to presume that he had abandoned it after a continuous cultivation for six years. In 1901, he planted 300 Texas pecan trees on it. No one interfered with or questioned his possession until June, 1901. For seven years under color of title, we find, he remained in the open and adverse possession of the north half of section 34, in township 4 north, and in range 3 west, and thereby acquired title thereto. *Downing* v. *Mayes,* 153 Ill. 330; *Ford* v. *Wilson,* 35 Miss. 490; *Hamilton* v. *Boggess,* 63 Mo. 233.

Reverse and remand for decree and proceedings consistent with this opinion.