BLACKBURN *v.* BROWN.

Opinion delivered April 27, 1925.

1. ADVERSE POSSESSION—INCLOSURE.—Acts of defendant and his grantor in constructing a fence of substantial nature around land which they used for cultivation and pasture, and in placing the same upon the tax books in their names, *held* acts of ownership evidencing adverse holding on their part.

2. ADVERSE POSSESSION—CONTINUITY.—The continuity of defendant's possession by means of a fence is not broken because a part of the fence across a slough is broken where defendant built a new fence around the slough with the consent of the adjacent owner.

Appeal from Johnson Chancery Court; *W. E. Atkinson*, Chancellor; affirmed.

*Jesse Reynolds*, for appellant.

*Hays, Priddy & Hays*, for appellee.

HUMPHREYS, J. Some thirteen years before the institution of this suit appellant became the owner by purchase of the fractional NW¼ of section 24, township 8 north, range 23 west, in Johnson County, Arkansas, abutting on what was formerly the north bank of the north channel of the Arkansas River, according to the government survey made in the year 1829. Opposite this land, and across the north channel of said river, there was a well-defined island, containing about 200 acres, which the government engineers surveyed and platted as a part of the government domain and which was described in

the patent from the United States to Styles P. Corlin in 1855 as being in sections 14, 23, and 24, in township 8 north, range 23 west, on the island. This island was bounded on the south by the south channel of said river. The north channel was about one-half mile wide, but, as time passed, it filled up and formed low bottom lands between the island and mainland, some of which became useful for purposes of pasturage, except during periods of high water, and the balance susceptible to cultivation. S. M. Brown, the father of appellee, purchased the island in 1912, and took immediate possession thereof. Appellee purchased one-half of it from him in 1918 and the other in 1921, paying full value therefor. At the time of his purchase his father's fence on the north and east included about fifty-five acres of the land adjacent to the island, which formed a part of the north channel of the river when the government survey was made. After his purchase of a part of the land in 1918, high water washed out parts of fifteen or twenty rods of the fence across a slough, and appellee got permission from appellant's tenant to run a new fence around the slough so as to include same in his pasture for stock water. This rendered it unnecessary to repair the fence running through the slough, so it remained standing in its place across the slough in its broken condition.

On the 28th day of June, 1922, appellant brought this suit against appellee in the chancery court of said county, claiming that fifty-five acres of land in the possession of appellee was an accretion to the mainland, and, because of that fact, belonged to him, and praying that appellee be restrained from trespassing thereon.

Without making objection to the jurisdiction of the court, appellee filed an answer denying that the land inside his old fence, which formed a part of the north channel of said river at the time of the government survey, was an accretion to the mainland, but alleging that same was an accretion to the island; and, by way of further defense, pleading that he and his grantors had acquired title thereto by seven years' adverse possession.

The cause was submitted to the court upon the pleadings and testimony adduced by the respective parties, which resulted in a decree quieting and establishing the title to the fifty-five acres of land in question in appellee, from which is this appeal.

We deem it unnecessary to determine whether the land in controversy was an accretion to the mainland or to the island, as it is revealed by a decided preponderance of the evidence that appellee and his father inclosed and held the land adversely for a period of more than seven years before the institution of this suit, claiming title thereto.

There is little or no dispute in the testimony that S. M. Brown, the father of appellee, inclosed the land in controversy with a substantial wire fence, and that thereafter he and appellee used a part thereof for purposes of cultivation and the remaining portion for purposes of pasturage; the real conflict in the testimony being whether the fence was built in the spring of 1915 or of 1917.

Appellant introduced eight witnesses who testified that the fence was not built until the spring of 1917 or later, but twelve witnesses were introduced by appellee, who testified just as positively as the others that the fence was built in the spring of 1915. The witnesses on both sides based their several recollections as to when the fence was built upon incidents which had happened in the past and data at hand, indicating just when the fence was constructed. We have considered the testimony of all the witnesses in the light of these incidents and data in arriving at our conclusion. In doing this we attached considerable importance to the fact that the fence was built within a week or ten days after S. M. Brown had the lines on his land run by the county surveyor for the purpose of building the fence. Ezra Adkins was the county surveyor, and had been for many years. He testified by reference to his field-notes, which showed that he made the survey for S. M. Brown on the 1st and 2nd days of February, 1915. V. R. Brown, who is the

appellee, his two brothers, Favin and Clifford, and his mother, Mrs. S. M. Brown, testified that the fence was built in the spring of 1915, while V. R. Brown was attending Scarritt College at Morrisville, Missouri, during his senior year. His diploma shows that he graduated from the college with the degree of Bachelor of Arts and Science on June 8, 1915. In arriving at our conclusion we also attached much importance to the fact that two of the witnesses who built the fence testified that it was finished some time in March, 1915.

Appellant suggests that the acts of ownership and occupancy exercised by appellee and his father over the land were not of sufficient notoriety to put him upon notice that they were claiming the land as their own. The character of the acts consisted in constructing the fence out of cedar and mulberry posts and wire. The fence therefore was of a substantial nature. They used the land for purposes of cultivation and pasturage. They placed the land upon the taxbooks in 1919. These acts of ownership evidenced an adverse holding on their part. *Carpenter* v. *Smith*, 76 Ark. 447; *McCombs* v. *Saxe*, 92 Ark. 321.

Appellant also suggests that the continuity of possession was broken when the high water in the spring of 1918 washed out, at places, a few rods of the fence, which were not repaired. That part of the fence referred to ran across a small slough. It became unnecessary to repair this part of the fence in order to preserve the continuity of the possession, because appellant's tenant permitted appellee to run a new fence around the north side of the slough so as to leave the whole slough within appellee's pasture for stock water. No part of the land or slough north of the old line fence was claimed by appellee, and no part of that small strip of land was embraced in the decree quieting his title. *Robinson* v. *Nordman*, 75 Ark. 593. In the case cited the fence in question was repaired, but the necessity of making the repairs in the instant case was obviated by the construction of the new fence around the slough with the assent of appellant.

No error appearing, the decree is affirmed.