### FAULKS et al. v. SCHRIDER.
#### No. 7393.

United States Court of Appeals for the District of Columbia.

Decided June 28, 1940.

---

John Wattawa and Joseph P. Tumulty, Jr., both of Washington, D. C., for appellants.

Leon Pretzfelder, Leroy S. Bendheim, and Francis M. Sullivan, all of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and RUTLEDGE, Associate Justices.

RUTLEDGE, Associate Justice.

The appeal is from a judgment of the District Court holding that plaintiff Francis J. Schrider, trustee, has title to disputed land by adverse possession and is therefore entitled to a condemnation award from the District.

The disputed tract of land may be designated briefly as lot 803. In 1893 it was part of a large tract known as "West Brookland" held by Thomas Armat and John M. Comstock as trustees under a development project. By deed of July 27, 1897, Armat and Comstock conveyed parts of "West Brookland" (specifically, block 23 and lots 7 to 11 inclusive in block 22) to John M. Comstock, defendants' predecessor in title. June 30, 1898, they deeded the rest of "West Brookland" (except for three earlier conveyances to other persons) to John A. Baker and John Maguire, trustees, plaintiff's predecessors in title. All parties to the transaction apparently assumed that lot 803 was included in the deed to Baker and Maguire. From 1898 to 1911 the children of John Maguire farmed it. From 1911 to 1918 no one cultivated the property and it "grew up in weeds and briars." In 1920, one Williamson rented it from Maguire and used it as a garden until 1928. Maguire permitted Williamson to construct a drive over part of the property. Plaintiff Schrider succeeded Baker and Maguire as trustee in 1926 and gave Williamson permission to continue his use of the property. Schrider attempted to sell the property. In 1932 he complained to a contractor be-cause a cement mixer had been left on the lot, and in 1934 he gave leases to three persons for parts of the land. The property was generally known, at least after 1920, as the "Maguire estate." Taxes on lot 803 were paid regularly by Baker and Maguire from 1907 to 1925. The taxes for the second half of 1925 were not paid by Schrider until 1929 because of an error of the tax collector's office, but otherwise the taxes were paid regularly until 1930. No taxes were paid from 1930 to 1937 but taxes for these years were deducted from the condemnation award.

In 1936 the Commissioners of the District brought condemnation proceedings for the purpose of extending Eighth Street, Jackson Street and Kearney Street, Northeast. As lot 803 lay in the path of the proposed improvements it was condemned and the jury awarded plaintiff about $5,000 as damages. Defendants then asserted title to the condemned land and claimed the award. The Commissioners therefore deposited the money in the registry of the court pending settlement of the dispute between the parties. Plaintiff brought this action March 11, 1937, to obtain payment of the award. The trial court first held that lot 803 was included in the deed to Baker and Maguire and that plaintiff therefore was entitled to the award. This court reversed that holding,[1] remanding the case to determine whether plaintiff had title as a result of adverse possession. On February 20, 1939, the trial court made its findings of fact and conclusions of law and entered judgment for plaintiff, holding that plaintiff and his predecessors had obtained title by adverse possession.

Plaintiff contends that he has obtained title either under applicable common-law principles of adverse possession or under D.C.Code (1929) tit. 25, § 2.[2] As we think the statutory provision is controlling, we shall confine the discussion to it. The section reads: "In an action to recover vacant and unimproved lots of ground it shall not be necessary, in order to maintain the defense of adversary possession, to show that the premises in controversy had been inclosed; but if it appear that the property had been assessed for taxation to the defendant, or those under whom he claims, and that he or they had regularly paid the taxes on the same and were the only persons who had exercised control

[1] Faulks v. Schrider, 1938, 69 App.D. C. 137, 99 F.2d 370.

[2] The provision also appears in Title 24, § 175.

over the same for a period of fifteen years before the bringing of the action, such facts shall be the equivalent of possession by actual inclosure."

The testimony in the record that lot 803 was vacant and unimproved is not disputed. Defendants contend that this is not "an action *to recover*" such lots, that adverse possession is not being used as a "defense," that plaintiff and his predecessors had not "exercised control" during the entire statutory period, and that plaintiff did not pay taxes for *the* "period of fifteen years before the bringing of the action."

### I.

As to the first two of these contentions, we do not believe that Congress intended to limit the substantive effects of the legislation to the specific procedural situation described in the statute. If adverse possession by meeting the statute's requirements could be proved only as a "defense," the parties would be remitted to physical combat with the stronger remaining in possession of the disputed land and occupying the favored position of defendant in the ejectment action. Out of physical possession, the adverse possessor would be compelled to prove all the elements of common-law adverse possession; but by resorting to the aboriginal expedient of expelling his adversary he would obtain the benefit of the statute. We think Congress did not mean to have one law of adverse possession for a defendant in ejectment and another for all other parties and actions; it simply stated the general statutory rule in terms of the party by whom and action in which it would be used most frequently. And we think it makes no difference whether the action is to recover the land itself or only its present equivalent—its value represented by the condemnation award. It may be noted also that the award of the jury in the condemnation case was made to the plaintiff here, and defendants made claim to the fund only after that award had been made. Although plaintiff filed this suit when the fund was paid into court and therefore is not technically "defendant" in a suit for "ejectment," he more nearly occupies that position in respect to the substantive rights involved here than do the defendants on this record.

Defendants' argument that the fifteen-year period must immediately precede the action is without merit. The statute says "*a* period of fifteen years," and it of course refers to the applicable statute of limitations [3] which would bar the action of other claimants, including the defendants here, upon the running of any fifteen-year period. Plaintiff's predecessors paid taxes on lot 803 regularly from 1907 to 1925. As this is more than the requisite fifteen-year period, we need not consider whether payment in 1929 of the taxes for the second half of 1925 was sufficiently "regular" to satisfy the requirements of the statute.

The questions remaining are: (1) whether, by making proof of certain facts "the equivalent of possession by actual inclosure," Congress intended to make them sufficient to establish title by adverse possession; and (2) if so, what are the facts which are given this effect? The second question, stated differently, is whether, by enacting the statute Congress intended merely to codify the existing law or perhaps to require the proof of facts in addition to those required to be shown by the preëxisting common law or, on the other hand, intended to change the common law by dispensing with proof of some of the facts previously required to be shown and requiring the proof of others.

### II.

As to the first question, we think there can be no doubt that Congress intended to make proof of the facts specified by the statute sufficient for the creation of title by adverse possession. What is the effect of "possession by actual inclosure"? There are cases which apparently hold that inclosure alone, together with the necessary adverse intent, is sufficient for adverse possession.[4] There is some indication in the early decisions of this court that inclosure alone might be considered adequate,[5] though it was not re-

3 D.C.Code (1929) tit. 24, § 341.

4 Rude v. Marshall, 1917, 54 Mont. 27, 166 P. 298; Thompson v. Philadelphia & R. Coal & Iron Co., 1890, 133 Pa. 46, 19 A. 346. A New York statute made "substantial inclosure" the equivalent of "possession." Palmer v. Saft, 1889, 56 N. Y.Super.Ct. 594, 3 N.Y.S. 250. The Texas court has held inclosure alone not sufficient under a statute requiring "cultivation, use, or enjoyment." Dunn v. Taylor, 1908, 102 Tex. 80, 113 S.W. 265.

5 In Johnson v. Thomas, 1904, 23 App. D.C. 141, 151, it was said that "while

quired. It is well established that inclosure together with cultivation, pasturage or other use is possession.[6] And where the land is inclosed, the courts seem not to have been insistent that the other acts of possession be shown clearly to have been continuous.[7] Thus it might be held in the case at bar that "inclosure" alone or with the various acts of dominion by plaintiff and his predecessors would establish title by adverse possession. But the statute makes proof of the facts which it specifies the equivalent, not merely of "inclosure," but of *"possession* by inclosure." It is therefore necessary to determine what Congress meant by that phrase.

Because much of the statutory and common law of the District is derived from that of Maryland,[8] and especially because the statute now under consideration was drawn with a view to Maryland law,[9] the meaning of the phrase "possession by actual inclosure" may best be ascertained by looking to the decisions of the Maryland court. Early Maryland decisions held that inclosure was essential to adverse possession.[10] Apparently none of the Maryland cases held inclosure alone to constitute possession, but it is clear that "possession by inclosure" in the Maryland decisions means actual adverse possession. In Davidson's Lessee v. Beatty, 1797, 3 Har. & McH., Md.,

594, the court said: "Where a person claims by possession alone, without showing any title, he must show an exclusive adverse *possession by enclosure,* and his claim cannot extend beyond his enclosures." [11] (Italics supplied) Other Maryland cases confirm the conclusion that "possession by inclosure" had a well-defined meaning which embraced all of the possessory elements necessary for adverse possession.[12] It is to be assumed that this meaning was carried over to the statute by the inclusion of the phrase.

Furthermore, "possession by inclosure" on its face means more than mere "inclosure"; it also means "possession." "Possession" for the statutory period, by cultivation, pasturage or other means, is sufficient provided it is open, notorious, continuous and adverse. The means of possession in the instant case is designated by the statute to be "inclosure," but the result is plainly "possession." That "possession by actual inclosure" means "title by adverse possession" seems incontrovertible from the fact that the statute relates to "an action *to recover"* realty, in which "in order to maintain the defense of adversary possession," proof of inclosure is dispensed with and proof of the other facts enumerated is made the equivalent not only of "inclosure," but of *"pos-*

---

inclosure is the most tangible evidence of adverse occupation, yet cultivation is the equivalent of inclosure for this purpose." Cf. Howison v. Masson, 1907, 29 App.D.C. 338, 348. From this it would appear that inclosure is the equivalent of cultivation, which was held to be sufficient in the Johnson and Howison cases.

[6] Johnson v. Thomas, 1904, 23 App.D. C. 141; Lockhart v. Tri-State Loan & Trust Co., 5 Cir., 1920, 268 F. 523; Connasauga River Lumber Co. v. Shippen, 5 Cir., 1923, 293 F. 579; Kidd v. Browne, 1917, 200 Ala. 299, 76 So. 65; Blackburn v. Brown, 1925, 168 Ark. 743, 271 S.W. 328; Gerbracht v. Lake County, 1927, 328 Ill. 399, 160 N.E. 1; Mobile & O. R. R. v. Strain, 1921, 125 Miss. 697, 88 So. 274.

[7] Cf. Myers v. Mayhew, 1908, 32 App. D.C. 205; Kidd v. Browne, 1917, 200 Ala. 299, 76 So. 65; Blackburn v. Brown, 1925, 168 Ark. 743, 271 S.W. 328; Combs v. Ezell, 1930, 232 Ky. 602, 24 S. W.2d 301. See also Gerbracht v. Lake County, 1927, 328 Ill. 399, 160 N.E. 1, 7: mere fencing and use is not sufficient "without a showing that such acts of *fencing and keeping it fenced* have

occurred for the full statutory time required to establish adverse possession." (Italics supplied)

[8] See the Organic Act of 1801, D.C. Code (1929) p. 449, § 1; Present Organic Act, D.C.Code (1929) p. 477, § 1.

[9] H.R.Rep. No. 1017, 56th Cong., 1st Sess. (1900) 4.

[10] Davidson's Lessee v. Beatty, 1797, 3 Har. & McH., Md., 594; Hoye v. Swan's Lessee, 1853, 5 Md. 237; Armstrong v. Risteau's Lessee, 1853, 5 Md. 256, 59 Am.Dec. 115. Decisions of this court, after the Maryland rule had been changed by statute, are to the contrary. Holtzman v. Douglas, 1895, 5 App.D.C. 397, 410, affirmed, 1897, 168 U.S. 278, 18 S.Ct. 65, 42 L.Ed. 466; Johnson v. Thomas, 1904, 23 App.D.C. 141; Howison v. Masson, 1907, 29 App.D.C. 338; Myers v. Mayhew, 1908, 32 App.D.C. 205.

[11] 3 Har. & McH. at page 621.

[12] See especially Cheney v. Ringgold, 1807, 2 Har. & J.,Md., 87, 94; Armstrong v. Risteau's Lessee, 1853, 5 Md. 256, 277, 59 Am.Dec. 115; cf. Hoye v. Swan's Lessee, 1853, 5 Md. 237.

*session* by inclosure," especially when this is reinforced by the fact that the acts specified are of a character consistent only with a claim of ownership, whether or not they were previously sufficient to establish it. Prior to the statute it was settled that payment of taxes, even by a trespasser, was very significant evidence of adverse possession.[13] Even if "possession by actual inclosure" required also proof that it was with intent to claim adversely, the clear purpose of the statute was to make proof of the specified facts not only the "equivalent of possession by actual inclosure" but also of that intention.

### III.

■ It remains to consider briefly what are the facts which, when proven, are to be given the effect prescribed by the statute. We have no doubt that it was intended to modify, not merely to codify, the previously existing common law in this respect. Otherwise, it is difficult to see that the Act had any purpose or fulfilled any need. It is not contended that the previously existing law was ambiguous or uncertain. In fact, the contrary is asserted and it is argued that we should apply that law here. Read literally and we think reasonably, the statute specifies that the prescribed effect shall be given when the following facts are shown: (1) that the land is vacant and unimproved; (2) that for a period of fifteen years prior to bringing the suit, it has been assessed to the claimant or those under whom he claims; (3) that he or they have regularly paid the taxes on it; and (4) were "the only persons who had exercised control over the same" during the fifteen-year period.

■ Except for the contention, rejected above, that the statutory period must immediately precede the beginning of the action, it is not questioned that any of these conditions has been fulfilled, except the last. It is said, however, that this in no way changes the previous law and is merely a restatement in statutory form of the common-law requirement that the claimant prove continuous acts of ownership, other than the assessment to and payment by him of taxes, throughout the required period. This construction would not codify the common-law rule. It would add another requirement to those previously existing, if full effect is to be given to the statute. Proof would be required both of acts of dominion which were sufficient to create title by adverse possession under the common law *and* the assessment to the claimant and payment by him of taxes as prescribed by the Act. This would make of it a revenue-enforcing measure. We do not believe that was its purpose. Neither do we think it was intended to make the acquisition of title by adverse possession more difficult than it had been previously. We think the obvious purpose, when the statutory conditions are otherwise fulfilled, was to dispense with the necessity for showing that other acts of dominion than assessment and payment of taxes have been continuous throughout the period, when no other person has exercised control within it. One who stands by for fifteen years, watching another pay taxes regularly on his property, paying none himself and not once in any way by word or deed asserting his claim, while the other does so by paying taxes continuously during the entire period, and in other ways though not continuously, is hardly in position to ask that the statute be construed to require more to divest his record title than was necessary prior to its enactment.

■ In this case it is unnecessary for us to do more than rule that the statute dispenses with the requirement that other acts of dominion by the claimant than the payment of taxes be continuous throughout the statutory period, provided the other conditions specified are fulfilled. It might be argued that the language is susceptible of an even broader construction,[14] but for

---

13 Holtzman v. Douglas, 1895, 5 App. D.C. 397, 411, affirmed, 1897, 168 U.S. 278, 284, 18 S.Ct. 65, 42 L.Ed. 466; Davis v. Coblens, 1898, 12 App.D.C. 51.

14 The statute may be read with the following emphasis: "that he or they had regularly paid the taxes on the same and were the *only* persons who had exercised control * * *." Thus, the effect of the statute would be to make payment of taxes "control" over the property,

which if uninterrupted by another's exercise of control is "the equivalent of possession by actual inclosure." In this connection, cf. D.C.Code (1929) tit. 24, § 163: "The plaintiff in his declaration must describe the premises claimed with reasonable certainty, and set forth distinctly the nature and quantity of the estate claimed by him in the same, and it shall be sufficient for him to state in addition thereto that the plaintiff was possessed of the premises, and while he

the purposes of this case it is sufficient to hold that title is established when the claimant, as did the plaintiff here, shows with respect to property of this character that for fifteen years: (1) it was assessed to him or his predecessors in claim; (2) he or they have regularly paid the taxes; (3) he and they have exercised other acts of dominion over the property, though not necessarily continuously during the entire period; and (4) no one else, including the holder of the legal title, has done so.

■ We think this construction is supported by the absence of any reason for requiring proof of greater or more facts when vacant and unimproved property is involved than when it is occupied or improved; by the fact that continuous assessment to and payment of taxes by the claimant for fifteen years keeps his flag unfurled and undipped, especially as to one who pays no taxes and in no other way acts as owner during that time; and by the difficulties which the courts had experienced in applying the strict requirement of continuity prior to enactment of the statute.[15]

It is not disputed that plaintiff and his predecessors held openly, notoriously, exclusively and adversely. It follows that plaintiff acquired title to lot 803 by adverse possession under the statute.

Affirmed.

STEPHENS, Associate Justice.

I think the judgment should be reversed. There is substantial evidence to support the findings of fact made by the trial judge. They are therefore binding. From the findings it definitely appears that there was no continuous period of fifteen years during which the appellee or his predecessors in interest were in that actual, open, notorious, hostile and exclusive possession of the property under a claim of right which —unless the statute involved in the instant case has changed the law—has always been necessary at the common law and in the District of Columbia to the acquisition of title by adverse possession. According to the findings there was one continuous period of possession from an unspecified date in 1898 to an unspecified date in 1911 —approximately thirteen years—and another from some time in 1920 until some time in 1928—approximately eight years. There was, however, uninterrupted payment of taxes by the appellee or his predecessors in interest from the years 1907 to 1925 inclusive. The theory of the trial court apparently was that to the thirteen year period of continuous actual possession there could be added two years during which taxes were paid, to complete the fifteen year period; and the theory of the majority is, as I understand it, that the payment of taxes uninterruptedly for fifteen years, plus "other acts or dominion over the property, though not necessarily continuously," is sufficient to establish title. I think neither theory correct. Both dispense with the requirement of continuous actual possession—the trial court's theory for two years, and that of the majority for the entire fifteen. I think the law requires continuous actual possession—consistent with the nature of the land—for the entire fifteen years whether taxes are paid or not.

Continuity of adverse possession throughout the period of limitations has always been required at the common law and in the District of Columbia. Indeed, the cases have placed special emphasis upon the necessity of continuity throughout the period of limitations. "It has been said

was so possessed the defendant entered wrongfully into possession of the same and withholds the possession thereof from the plaintiff, or wrongfully detains such possession, or that the defendant is wrongfully exercising acts of ownership thereon. Such acts of ownership, however, *unaccompanied with possession* shall not, *except as hereinafter provided*, be held to amount to an adversary possession, so as to make it necessary for the plaintiff to sue in order to avoid the bar of the statute of limitations." (Italics supplied)

The exception stated in the last sentence would appear to be applicable to the statute in question here which, as has been noted, appears both as Section 2 of title 25 and as Section 175 of title 24 of the Code.

[15] Cf. Davis v. Coblens, 1898, 12 App. D.C. 51, where the evidence during the last two years of the statutory period was said to be "meagre"; Reid v. Anderson, 1898, 13 App.D.C. 30, where the continuity of possession was broken by an entry of the title-holder.

Cf. also the following cases which have arisen since the statute was enacted, but in which it was not relied upon: Myers v. Mayhew, 1908, 32 App.D.C. 205; Johnson v. Thomas, 1904, 23 App.D.C. 141; Howison v. Masson, 1907, 29 App. D.C. 338; see also Note, 1932, 76 A.L.R. 1492, and the authorities there discussed.

594

that if there be one element more distinctly material than another in conferring title by adverse possession...it is the existence of a *continuous* adverse possession. Or, if the continuity of the possession be broken for a single day before the twenty years [1] have elapsed, the previous possession goes for nothing and the wrongdoer must commence *de novo*." Reid v. Anderson, 13 App.D.C. 30, 36 (1898). The courts, speaking in figurative terms, have declared that, in order to acquire title by adverse possession, the disseisor "must unfurl his flag on the land, and keep it flying, so that the owner may see, if he will, that an enemy has invaded his domains, and planted the standard of conquest." [2] And "The flag raised and planted over the property...must not be allowed to dip but to float continuously." See Odem v. Leahy, Texas Civ.App., 1924, 264 S.W. 218, 219. Dipping the flag restores the seisin of the true owner. The statement of the majority that "continuous assessment to and payment of taxes by the claimant for fifteen years keeps his flag unfurled and undipped," seems to me to beg the question in the case.

While the payment of taxes has been recognized by decisions in the District of Columbia and in the Supreme Court as "powerful evidence of claim of right" (Ewing v. Burnet, 1837, 11 Pet. 41, 54, 9 L.Ed. 624), or as "very important and strong evidence of a claim of title" (Holtzman v. Douglas, 1897, 168 U.S. 278, 284, 18 S.Ct. 65, 42 L.Ed. 466), the payment of taxes unaccompanied by other evidence of continuous adverse possession under a claim of right, has never been held sufficient to establish title. The conclusion reached by the trial court and by the majority is therefore dependent upon the Act of March 3, 1901, 31 Stat. 1189, c. 854, § 999, D.C.Code (1929) tit. 25, § 2, providing that:

"In an action to recover vacant and unimproved lots of ground it shall not be necessary, in order to maintain the defense of adversary possession, to show that the premises in controversy had been inclosed; but if it appear that the property had been assessed for taxation to the defendant, or those under whom he claims, and that he

or they had regularly paid the taxes on the same and were the only persons who had exercised control over the same for a period of fifteen years before the bringing of the action, such facts shall be the equivalent of possession by actual inclosure."

It is a settled principle of statutory construction that the legislature will not be held to have changed the rules of the common law unless it has indicated its intent to do so by clear and unambiguous language. I am unable to conclude that the language of the statute clearly indicates an intention to alter the rule of the common law with respect to continuity of possession. The use of the conjunctive in the phrase "had regularly paid the taxes on the same *and* were the only persons who had exercised control...for a period of fifteen years" and the use of the plural in the phrase "such *facts* shall be the equivalent of possession by actual inclosure" indicate, I think, that the Congress intended to require more than the mere payment of taxes; and I think that the phrase "were the only persons who had exercised control" cannot be said to refer to a mere absence of exercise of control by the true owner, but must be said to contemplate the exercise of control by the disseisor. For, unless the statute is construed as evidencing an intention by the Congress to require both the payment of taxes and the exercise of control by the disseisor, exercise of control and payment of taxes must be said to mean the same thing. And I find nothing in the statute indicating that the Congress intended that the exercise of control by the disseisor might be less than continuous.

I think that the Congress meant to say that the payment of taxes together with other coincident acts of continuous adverse possession by the disseisor would be sufficient, even in the absence of inclosure, to establish title by adverse possession to vacant and unimproved lands. That this steps up the requirement for the acquisition of title by adverse possession—because continuous adverse possession for the fifteen year period without the payment of taxes would otherwise be sufficient—seems to me not persuasive that the statute means what the majority declare it to mean. The

---

1 Twenty years was the period of limitations at the time of the decision of the case from which the quoted language is taken.

2 Quoted in 1 Am.Jur. 865. And see there cited Willamette Real Estate Co. v.

Hendrix, 1895, 28 Or. 485, 42 P. 514, 52 Am.St.Rep. 800; Robin v. Brown, 1932, 308 Pa. 123, 162 A. 161, citing R.C.L.; People's Sav. Bank v. Bufford, 1916, 90 Wash. 204, 155 P. 1068, citing R.C.L.

Congress may well have thought it desirable to enlarge the requirements for obtaining title to vacant and unimproved lands by adverse possession.

It is worthy of comment that not even the appellee urges the construction of the statute adoped by the majority. His contention is that where there was payment of taxes by the disseisor, a lesser degree of proof is required to establish adverse possession than in situations where there has been no payment of taxes. Indeed, the appellee attempts to enlarge the findings, by reference to the evidence, so as to induce the court to hold that there was a continuous actual adverse possession, without respect to the payment of taxes, for a full period of fifteen years—thus evidencing a lack of faith in any view that the mere payment of taxes would be sufficient either to fill out or to fill up the fifteen year period.

Under the rule established by the majority opinion, one may without actual inclosure gain title to vacant and unimproved lands, mistakenly assessed to him, by the mere uninterrupted payment of taxes for fifteen years, plus some other assertions of title non-continuous in nature, in the absence of any assertion of title by the true owner during the fifteen year period. How many assertions of title non-continuous in nature there must be, or how frequent they must be, or what intermittence between them is permissible, the majority do not state.[3] I think the rule established by the majority not only not justified by the language of the statute, but also one lacking definiteness, and susceptibility of uniform application. The virtue of the common law rule requiring continuous actual possession for the period of limitations was that it was quantitative in character. The rule laid down by the majority leaves to the decision of each particular case on its own facts the question whether there have been a sufficient number of intermittent acts of control, in addition to the payment of taxes, to warrant recognition of title in the disseisor. There is no longer that definiteness of standard desirable in protection of the stability of titles to real property.

[3] A table set forth below, prepared upon the basis of the findings of fact, shows that in every period of fifteen successive years within the total period 1907 to 1925 inclusive, during which there was uninterrupted payment of taxes, there was a nine year period of discontinuity of actual possession; and that the periods of actual possession, before and after the nine year period of discontinuity, varied from zero to not more than six.

| 15 Year Period | Actual Possession | Discontinuity | Actual Possession |
|---|---|---|---|
| 1907–1921 incl. | 4 years (1907–1910 incl.) | 9 years (1911–1919 incl.) | 2 years (1920–1921 incl.) |
| 1908–1922 incl. | 3 years (1908–1910 incl.) | 9 years (1911–1919 incl.) | 3 years (1920–1922 incl.) |
| 1909–1923 incl. | 2 years (1909–1910 incl.) | 9 years (1911–1919 incl.) | 4 years (1920–1923 incl.) |
| 1910–1924 incl. | 1 year (1910) | 9 years (1911–1919 incl.) | 5 years (1920–1924 incl.) |
| 1911–1925 incl. | | 9 years (1911–1919 incl.) | (6 years 1920–1925 incl.) |