(No. 16494.—Reversed and remanded.)
ROSE GERBRACHT, Appellee, *vs.* THE COUNTY OF LAKE,
Appellant.

*Opinion filed December 21, 1927—Rehearing denied Feb. 8, 1928.*

1. SWAMP LANDS—*when a complainant fails to establish title against county by adverse possession.* As the Statute of Limitations runs against a county in favor of a party holding swamp lands adversely to it a complainant may have his title quieted as against the county by prescription, but to do so by the joining of several possessions the complainant must show privity of estate by showing that the successive disseizors acquired the right of possession by virtue of a deed or contract therefor from their predecessors in possession, and it is not sufficient merely to show a continuous possession for many years by the various parties in possession claiming the land as owners, without showing privity of estate.

2. LIMITATIONS—*what must be shown to establish possession for statutory period.* To establish title by adverse possession such possession must be established by proof of fencing the land, by cultivation or by other similar uses for the full statutory period under claim of ownership in such manner as to give notice thereof to the true owner; and possession of one body of land, although fenced, will not establish title to another tract which is not fenced.

3. SAME—*what is necessary to establish adverse possession by fencing.* The fencing of land and improving it by digging drainage ditches, cutting hay and noxious weeds and using it for pasture will not establish adverse possession unless the acts of fencing and keeping it fenced have been for the full statutory period required to establish adverse possession.

APPEAL from the Circuit Court of Lake county; the Hon. CLAIRE C. EDWARDS, Judge, presiding.

ASHBEL V. SMITH, State's Attorney, (SIDNEY H. BLOCK, and ALBERT L. HALL, of counsel,) for appellant.

E. V. ORVIS, (JOHN T. MURRAY, of counsel,) for appellee.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

This is an appeal from a decree entered in the circuit court of Lake county establishing and quieting title in appellee, Rose Gerbracht, to certain real property in Lake county, Illinois.

The original bill was filed by Rose Gerbracht and her mother, Gertrude Gerbracht. It prayed for a decree quieting the title of Rose Gerbracht to land referred to in the record as tract A, which is described as the northeast quarter of the southeast quarter and the south half of the southeast quarter of section 21, lot 2 in section 21 and lots 4 and 6 in section 22, the three numbered lots comprising all the land lying east of what is known in the record as the "government meander line" and west of the thread of the stream of Fox river, according to a plat of the survey of Alexander Wolcott on file in the general land office of the United States; and quieting the title of Gertrude Gerbracht to land referred to in the record as tract B, which is described as the northeast quarter of the northeast quarter and the north half of the southeast quarter of the northeast quarter of section 28, the north half of the northwest quarter, the north half of the south half of the northwest quarter and the north half of the southwest quarter of the northeast quarter of section 27, all that part of the northwest quarter of the northeast quarter, all that part of the northeast quarter of the northeast quarter, and all that part of the north half of the southeast quarter of the northeast quarter that lies west of Fox river, in section 27. All of the lands of both complainants are in township 46 north, range 9 east of the third principal meridian.

There were a great number of parties made defendant to the bill, all of whom were defaulted except the county of Lake. Subsequent to the filing of the bill it was amended, and as amended it contained the following allegations: Appellee, Rose Gerbracht, is the owner in fee simple and in possession of the lands described as being in tract A

and Gertrude Gerbracht is the owner in fee simple and in possession of the lands described as being in tract B. Gertrude is the mother of appellee, and they joined in the bill for the purpose of clearing the title to their separate premises to save costs and expenses. The title of record to all the lands in tracts A and B that lie immediately east of the government meander line and west of the center thread of the stream of Fox river is in the county of Lake, which obtained title to said lands by virtue of the Swamp Land act of the United States of 1850, by which act the lands were ceded to Illinois, and by an act of the Illinois legislature in 1854 the lands were ceded to the county of Lake. Complainants and their predecessors in title have been in open, notorious, exclusive, adverse and continuous possession of their respective lands, claimed by the county of Lake, for more than twenty years prior to the filing of the bill and have paid all taxes levied against said lands during that time. The county of Lake during twenty years and more did not exercise any right or interest in said lands, and it has no title or interest in the same but has lost the right to assert its title by reason of the twenty-year Statute of Limitations and is estopped from asserting any title thereto. It was further set forth in the bill that there were various conveyances of tracts of the lands which should be removed as clouds upon the title to said lands. The respective claims of title of the claimants which it is alleged should be removed as clouds are set forth in the bill, with the averment that the claimants have no right or title to such lands, and with the further averment that the complainants have been in the exclusive and adverse possession of the lands for a period of more than twenty years prior to the filing of the bill, claiming title to the same against the whole world. The county of Lake filed a demurrer to the bill as amended.

At about the December term, 1916, the lower court granted leave to Rose Gerbracht to file, and she filed, a

328—26

supplemental bill, in which, after reciting the filing of the original bill as amended and the prayer of the original bill, etc., she made the following allegations: Gertrude Gerbracht, her mother, died in the year 1916 and her will was duly filed for probate in the county court of the county of Lake, by which she devised to Rose all her right, title and interest in all the real estate described in said bill as owned by her, Gertrude; that the will was duly filed for probate in said county and a hearing was set for November 20, 1916; that Rose "is now" the owner in fee and in possession of the entire property described in the amended bill as belonging to Gertrude. The supplemental bill then closes with this allegation: "Your oratrix desires to proceed with the said amended bill of complaint as the sole and only complainant therein." She prayed that the parties defendant in the original bill, who are made parties defendant to the supplemental bill, be required to make full and direct answer to the same, etc., and that the supplemental bill may be deemed and taken "as and for a bill of supplement to her said original amended bill," etc. On March 20, 1920, the supplemental bill was stricken from the files on motion of the defendants and the demurrer to the original bill as amended was sustained by the court, and leave was then given to Rose to proceed as sole complainant, and leave was also given her to file an amended bill, or an amendment to the amended bill. In pursuance of the leave granted Rose filed an amendment to the original bill with the heading: "Second—Amending the second paragraph. After the insertion above mentioned insert the following: 'Your oratrices would further represent and show that the complainant is informed and so states the facts to be,' " that the county of Lake claims some interest or title in and to that portion of the lands involved between the meander line and the center of the stream by virtue of the Federal Swamp Land act passed in 1850, but if it ever had any interest it has long since lost the same by abandonment for

a period of fifty years and by reason of accepting taxes on the same from Rose and her immediate grantors, and by reason of valuable improvements made on the same by "your oratrices and her assigns," and that the county has abandoned its claim and is estopped to claim any interest against Rose. The county of Lake on March 14, 1921, filed a general demurrer to the amendment to the bill, which was afterwards withdrawn. On December 29, 1921, the county filed a general answer to the bill of complaint and amendment thereto, stating that it is not advised concerning the matters and things charged in the bill and amendment thereto, asking that Rose be required to make strict proof of the matters and things therein alleged, denying that she is entitled to the relief prayed or any part thereof, and praying the same advantage of the answer as if the county had pleaded or demurred to the bill of complaint and amendment thereto, etc. The cause was then referred to a special master in chancery to take proofs, reduce the testimony to writing and report his conclusions to the court.

On October 19, 1923, the special master filed his report of the evidence taken, showing that no proof was offered by the county of Lake. The special master found that Gertrude Gerbracht died in the year 1916 and that her last will and testament was duly filed for probate. The report does not show that the will or any copy thereof was put in evidence and the record does not show that such will was ever introduced in evidence. Neither the report of the master nor the record discloses who were the heirs of the testatrix at the time she died or at any other time. The master found that Rose Gerbracht is the owner in fee simple and was in possession of all the lands described as being in tracts A and B, and that she and her predecessors in title have been in the open, notorious, exclusive, continuous and adverse possession of all the lands for a period of more than twenty years last past, claiming title as against the world, and that during all that time she and her prede-

cessors have paid all taxes and assessments legally levied against the lands and each parcel thereof. The master found that all the other allegations of the bill had been proved, and recommended to the court that the prayer of the bill be granted. On October 19, 1923, the court entered a decree in accordance with the recommendations of the master. Neither the decree nor the master's report recites the contents or provisions of the alleged will or who constituted the heirs of the testatrix.

On December 21, 1923, there was an order entered by the court vacating the decree theretofore entered on motion of the county of Lake. On March 27, 1924, an order was entered that objections to the master's report stand as exceptions to the same. On August 13, 1924, there was a stipulation entered into by the county of Lake and Rose Gerbracht to the effect that the cause be submitted for consideration to Judge Reynolds; that said judge pass upon and decide all matters of law and fact covered by the exceptions to the master's report the same as if matters covered by the exceptions had been covered by objections filed before the master and the same as if such exceptions had been filed before the original decree was entered; that in passing upon the cause the court is to consider only the testimony included in the master's report and a copy of the government plat and Wolcott survey attached thereto, which are stipulated to be a true copy of the government plat and the Wolcott survey appearing of record in Lake county, and that the court shall determine and pass on the merits of the case the same as if the testimony covered by the master's report had been originally introduced and heard before the court instead of before the master. On the hearing in accordance with the stipulations the court entered substantially the same findings and decree as were made in the former decree, and from that decree the county of Lake has perfected its appeal to this court.

We have shown substantially all of the allegations in the original bill, including amendments thereto. It clearly appears from an inspection of the bill as amended that there is no allegation of the death of Gertrude Gerbracht, the mother of appellee; that there are no allegations of the contents of the will referred to in the supplemental bill or in the original bill as amended; that the original bill as amended does not disclose who were the heirs of Gertrude, and that there was no change in the allegation in the original bill to the effect that Gertrude was the owner in fee and in possession of all the lands described as composing tract B. The supplemental bill filed by appellee, with all its contents, was stricken from the files, and therefore cannot now be considered as any part of the record. The original bill as thus amended therefore stands as a bill charging that appellee is the owner of the lands composing tract A and that Gertrude is the owner of the lands composing tract B, and that these owners are in possession of their respective tracts. Under the bill as thus framed appellee could only be declared the owner of tract A and her title thereto declared and quieted. We have pointed out this condition of the record for the purpose of suggesting the advisability of amending this bill on remandment of the cause for new trial as to the allegations concerning tract B.

It is definitely and positively stated by appellant that its only contention on this appeal is that appellee has failed to prove her case by the strict proof required by law and the answer of appellant demanding that strict proof be made. On this appeal the only lands appellant claims to have any interest in, are the lands in tract B that lie between the government meander line and the thread of the stream of Fox river. These lands, properly described, compose that part of the northeast quarter of the northeast quarter and the north half of the southeast quarter of the northeast quarter in section 28 that lies immediately east of the government meander line and all of the lands described

as being in section 27. The strip of land in section 28 is of about the width of 220 feet at its south end and from 70 to 75 feet wide at its north end, with a straight boundary line on the east which is the section line, and, as we understand the record, it is what is known as lot 1 in section 18, and as it appears on the map it is of about the average width of 150 feet or less. The west line of Fox river, according to the plat in the record, crosses the north line of section 27 at the northwest corner of the northeast quarter of that section and then meanders in a southeasterly direction and crosses the south line of the north half of the northeast quarter of that section slightly east of the center of that quarter section. It then meanders southerly and crosses the south line of the north half of the southeast quarter of section 27 about twenty-five rods west of the east line of said section. The thread of the stream of Fox river is an unknown distance east or northeast of the west line of the river running through the northeast quarter of said section. This appeal only affects lands in sections 27 and 28. We will confine our consideration of this appeal to the single question submitted by appellant. In the consideration of this question attention must also be given to the fact that the county formerly owned, and before this suit was begun conveyed, the swamp lands north of sections 27 and 28, known and described as lots 4 and 6 in section 22 and lot 2 in section 21, the last named lot being that portion of the east half of the southeast quarter of section 21 that lies immediately east of the meander line that runs through that quarter section.

There were only two witnesses whose testimony related to the question involved in this appeal, Rose Gerbracht and James Neish, and their evidence is in substance the following:

Rose Gerbracht testified that she lives at Grass Lake, in sections 21 and 22, and has lived there all her life—forty-four years. Her mother's name was Gertrude and

she has been dead six years. (Witness testified in 1923.)
At the time the bill was filed in this case (January 28,
1914,) she was in possession of lots 2, 4 and 6 in sec-
tions 21 and 22, and has been in such possession since
shortly after her father, Joseph Gerbracht, died, about
1912. Her father had been in possession of the lots from
1867 to his death. He received a warranty deed from
Andrew Coon and wife to some land directly west of those
three lots and west of the government meander line in sec-
tion 21 and built his home on that land shortly after Coon
deeded it to him and lived there continuously until his death.
She remembers back to about 1884, and states that no other
person except appellant since that year has claimed lots 2,
3 and 4. Her father built the first fences there. They ran
from the meander line east about eighty rods. She "pre-
sumes" that he must have built other fences, and that he
must have built fences at the south side as well as the north
side. She does not remember about that, but knows that
it was all the fence necessary to keep cattle from "coming
in." Other improvements were ditches that had to be made.
One came down from the north to the outlet from the small
lake that lies west and another ditch was made to extend
east to the river. Witness in the foregoing testimony evi-
dently referred to lots 2, 4 and 6 and the improvements
thereon. The land conveyed to her father by Andrew Coon
and wife is not disclosed by this record. She introduced
in evidence their deed, but the record only discloses its
date without stating the land conveyed by it. As she states
that it is west of the foregoing lots we conclude that Coon
deeded some part or all of the northeast quarter of the
southeast quarter and the south half of the southeast quar-
ter of section 21 that lies west of the government meander
line, which is the boundary line between the upland west of
it and the swamp land east of it, as those were all the lands
west of the meander line that are alleged in her bill as be-
longing to her. Her evidence that in any way relates to

the lands in question in sections 27 and 28 is, that on the west bank of Fox river there are buildings. The first one is immediately north of where "this ditch" goes into the river. This building has been built there about fourteen years— since about 1909. It was put up by one Nelson. During all this time she and her father claimed ownership of the land extending out there "where this building is." There are other buildings on the west bank of Fox river. There is one farther south—between one-half and three-quarters of a mile. O'Connor is in possession of them "now." Her claim of ownership extended to this last mentioned building. It lies south of the south line extending east of the property that her father bought from Coon. The ground is swampy in some places, and in some places it becomes almost solid but not solid enough at all times of the year for cattle and horses to travel on it. It is covered with grass of various kinds and rushes. "This ditch" was dug by her upon the land that was bought by her father of Coon. It extended eighty rods and was twenty feet wide, and averaged about four feet of water "when the water was at its natural level." That ditch has been there two years. Prior to that time there was a smaller ditch that was used to drain the land. The larger one is used for the same purpose and also "as a patch for boats to get up and down the farm." "The first ditch" has been there nearly twenty years. The original ditch did not flow in the same channel and "we opened up a new one." She has taken care of the noxious weeds, which are mostly Canada thistles, spending about a day's time each year in cutting them. Her father also cut them. She thinks her father cleaned the smaller ditch for the first time about forty years ago. She further states that the lands in question between the meander line and Fox river are largely swampy with some higher spots in them, with every assortment of wild weeds and grasses on them. Some grass, situated "near the north line on the north side of the meander line," is fit to be cut

for hay. Her father cut the hay and since his death it has been pastured by her for twelve years. All the people who occupied the land lying immediately east of the meander line and west of the Fox river have always claimed it. She remembers that one McIlwain, who occupied it nearly forty years ago, and D. T. Smiley, who occupied it, claimed to own it. She states that the improvements, including the ditches and the cutting of the noxious weeds, greatly enhanced the value of the land; that the cost of the ditches was $2200; that O'Connor was a tenant of her mother and that he had been on the property about nine years.

James Neish testified that he is acquainted with the territory lying west of the channel of Fox river and Grass Lake, known as the east part of the Smiley farm and Gerbracht farm, in sections 21 and 22. He is sixty-eight years of age and resided close to that territory in his boyhood. John Heaney used to own the Gerbracht place, and as far as he knows Heaney took possession under a warranty deed from Seymour Cole and wife dated June 8, 1850. At one time Heaney also had possession of what is known as the Smiley farm—that part lying between the high land and the Fox river. He sold it to one McIlwain, who, as far as he knows, is the Samuel McIlwain who received a deed to it October 11, 1870. He took possession of it at that time and held it until he sold it to David Smiley, March 18, 1884. Smiley held it until he sold it to Katherine Kelley and Edward Kelley, January 1, 1897. (The record shows that the land which Smiley obtained came by *mesne* conveyances to him from David Robertson, the patentee of the land, and that the land conveyed to him was the northeast quarter of the northeast fractional quarter of section 28 and is that part of the forty acres that lies west of the meander line.) Smiley had possession of all of the land lying between Fox river and the "property in question." As to whether Heaney and the other people had possession of the property "clear to the middle of Fox river,

they claimed it all and owned it and used it." He remembers where Blarney Island, on the west side of Fox river, is. (The witness probably refers to the property in question on this appeal as Blarney Island.) He does not remember why it was so called. He does not remember the condition there when he first saw it, but the water was around the island when it was high. The people aforesaid fixed it up so they could drive a team on it, and the ditches of all that land were dug by the "Smiley and Gerbracht people." He does not think Kelley had possession very long. Kelley sold it to one Freese, who took possession of it after April 22, 1901, and rented it to a man by the name of Farmer. He then made this statement: "The way I understand it, Freese held possession until he apparently sold it to Gerbracht. These different grantors, from a date back as far as I can remember until Gerbracht took it, have had continuous possession." (This statement of the witness is contradicted by the exhibits offered in evidence, which show that Smiley conveyed the land he obtained from McIlwain to the Kelleys in 1897, that the Kelleys conveyed it to Charles J. and Martin Freese on April 21, 1901, and that Charles J. Freese and wife conveyed it by warranty deed to Henry Ahrens on October 17, 1904, and not to Gerbracht.) He does not know of any person except those mentioned in the chain of title that claimed any right to or possession of any of that land. The Gerbrachts have been living on the old place. (Their home was on the southeast quarter of section 21.) It has been fenced continuously on the north and south line. There was no fence on the east side—"that opened up into the water." The ditches have been dug to drain the land, the fences have been kept up and the road constructed to better use.

The record contains, after the evidence of Neish, this statement: "That James Neish further testified as follows:" After this statement, ending with the colon, are inserted the entire findings of the master in chancery, which

occupy more than twenty printed pages of the abstract. It does not seem possible that the witness knowingly thus testified in the language of the master in chancery, and we have disregarded it as any part of his evidence.

Appellee introduced in evidence a warranty deed from John H. Gerbracht, an unmarried man, to Gertrude Gerbracht, dated March 9, 1910, to the northeast quarter of the northeast quarter and the north half of the southeast quarter of the northeast quarter of section 28, containing 58 acres, more or less; also all the land, both slough and upland, lying and adjoining the above described tracts on the east and outside of the meander line, meaning the slough and upland lying between the east line of the above tract and the channel of the river, containing about 40 acres; also a warranty deed from John W. Ranstead, a widower, to John H. Gerbracht, dated July 17, 1908, to the same lands described in the above deed of John H. Gerbracht to Gertrude Gerbracht; also a quit-claim deed from John H. and Pearl Gerbracht to appellee, dated December 17, 1917, to the same lands described in the deed of John to Gertrude. This record discloses that John is the brother of appellee, but it does not disclose what relation, if any, Pearl Gerbracht bears to either John or appellee.

Appellee apparently relies on the testimony in this record, with the three deeds to her just described, to establish title in herself by adverse possession. There is no testimony in the record showing that John W. Ranstead was ever in possession of any of the land deeded by him to John H. Gerbracht, and the record does not disclose how he obtained, or claimed to obtain, title to the premises conveyed by him. There is no privity of title or of possession between any of the parties testified to by appellee and Neish as having been former owners and in possession of the land in question and appellee or any of her grantors. The record does show a continuous possession of the lands in question for a great many years by the various parties who have

been in possession and claiming them as owners, but that is not sufficient. The title to such lands may be acquired against the county by prescription, as the Statute of Limitations runs against the county in favor of the party holding swamp lands adversely against it. (*Piatt County* v. *Goodell,* 97 Ill. 84; *Hammond* v. *Shepard,* 186 id. 235; *Schulte* v. *Warren,* 218 id. 108.) Title by adverse possession, well established by appellee, might be used by her as a basis for having her title declared and quieted by a bill in equity. (*Kepley* v. *Scully,* 185 Ill. 52; *Bugner* v. *Chicago Title and Trust Co.* 280 id. 620.) To authorize the joining of several possessions between successive disseizors, so as to make one continuous possession for the purpose of establishing title by adverse possession, privity of estate is necessary,—that is, a showing that the successive disseizors acquired the right of possession by virtue of a deed or contract for possession from their predecessors in possession. (*Rich* v. *Naffziger,* 255 Ill. 98.) It is also the law, as contended by appellant, that proof to overcome the presumption in favor of the true owner's right to recover in a suit of this character must be clear, strict, positive and unequivocal. Such title may be sustained by proof of fencing the lands and keeping them fenced for the time required and using them in a way that gives notice to the whole world that the party is possessing and claiming them as his own. It may also be proved by the cultivation of land, and other similar uses of it, for the statutory period, without fencing, as to that portion of the land actually cultivated and so used, if the same is possessed and used under claim of ownership and in such a manner as to give notice thereof to the true owner. The possession of one body of land, although enclosed within a fence, with claim of ownership of another large body of land for the statutory period that is not so enclosed, will not establish title to the latter land. Neither will the fencing of the latter land and the improvement of the same by the digging of drainage

ditches and the cutting of hay and pasturing the land and cutting noxious weeds, establish adverse possession without a showing that such acts of fencing and keeping it fenced have occurred for the full statutory time required to establish adverse possession.

It is clear from the showing in this record that the decree of the circuit court should be reversed. That portion of the decree of the circuit court establishing and quieting title in appellee to the land in question on this appeal is reversed and the cause is remanded to the circuit court.

*Reversed and remanded.*